Carrie **MOORE** et al.

v.

Aldo **COLAUTTI** et al.

Lorraine **TILFORD** et al.

v.

Aldo **COLAUTTI** et al.

Carmen **Torres**, Ruby **Washington**, Intervening Plaintiffs.

Civ. A. Nos. 75–1314, 75–2395.

United States District Court, E. D. Pennsylvania.

Nov. 19, 1979.

As Amended Dec. 4, 1979.

---

Richard A. Katz, Stanley Griffith, York, Pa., Community Legal Services, Inc., Walter Walkenhorst, Philadelphia, Pa., for plaintiffs.

Stanley I. Slipakoff, Asst. Atty. Gen., Hubert B. Barnes, Deputy Atty. Gen., Dept. of Justice, Harrisburg, Pa., Linda M. Gunn, Asst. Atty. Gen., Dept. of Public Welfare, Harrisburg, Pa., for defendants.

Gregory Paulson, Alan Linder, Susan Wood, Central Pennsylvania Legal Services, Lancaster, Pa., Jonathan M. Stein and Richard Weishaupt, Community Legal Services, Philadelphia, Pa., for intervening plaintiff Carmen Torres.

Lehigh Valley Legal Services, Mark I. Weinstein, Jeffrey L. Gilbert, Harold J. Funt, Allentown, Pa., for intervening plaintiff, Ruby Washington.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

These consolidated actions are brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 to invalidate and enjoin the policies and practices of the Pennsylvania Department of Public Welfare in obtaining reimbursement from individuals who received state-administered public assistance pending awards of federal Supplemental Security Income benefits. Defendants are state officials employed by the Department of Public Welfare. The plaintiff class consists of recipients of state General Assistance (GA) benefits and recipients of Aid to Families with Dependent Children (AFDC) benefits who are eligible for benefits under the SSI program, 42 U.S.C.

§ 1381 *et seq.*, and who have been or will be subject to the Department's policies and practices to obtain reimbursement from SSI benefits. for assistance granted pending receipt of SSI awards. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4). Plaintiffs request not only monetary damages, but also declaratory, injunctive and notice relief.

Oral argument on cross-motions for summary judgment was held on March 7, 1979, and the parties then agreed that the factual record, which includes extensive stipulations, was complete and that a final hearing would be unnecessary. Accordingly, the actions were submitted to the Court either for summary judgment or for judgment on the merits as a nonjury case stated.

For the reasons stated hereinafter, we deny the cross-motions for summary judgment and we award partial declaratory relief in favor of the plaintiffs. We deny plaintiffs' request for monetary damages and injunctive relief.[1]

### I. *Facts and Procedural History*

These consolidated lawsuits present a case of first impression in the federal courts regarding state recoupment of public assistance from federally awarded SSI benefits.[2] The Moore action was filed in the Eastern District of Pennsylvania on May 8, 1975, and the Tilford action was filed in the Middle District of Pennsylvania in June 1975. Shortly thereafter the Tilford case was transferred to the Eastern District and, on September 29, 1975, the cases were consolidated before this Court. After consolidation, several persons requested the right to intervene as plaintiffs, and all intervention

motions were granted.[3] In addition, on May 5, 1978, the Court approved the parties' stipulation for a class action and after review accepted their definition of the proposed class.

The plaintiffs have previously filed motions for preliminary injunction and the defendants have previously filed motions to dismiss. By agreement of the parties we deferred ruling on these motions, as set forth in our Order of September 29, 1975. The parties then engaged in discovery proceedings and stipulated to facts for summary judgment. Two documents embody these stipulations. The first document is entitled "General Stipulations", and it describes the official policies and practices of the Department regarding reimbursement of public assistance from SSI benefits. The second document is entitled "Individual Stipulations", and it sets forth areas of agreement concerning the Department's collection actions as to the original plaintiffs and the intervening plaintiffs.

In addition to these two sets of stipulations, the factual record in these actions consists of the following materials: depositions of defendants and defendant's employees, including claims settlement agents and caseworkers; interrogatories and answers thereto; defendants' answers to plaintiff's request for admissions (though these admissions are superceded to the extent that they may contradict the general or individual stipulations); the officially filed complaints of plaintiffs and intervening plaintiffs (no answers were filed by defendants to any of the complaints as defendants rely on the stipulations); affidavits of plaintiffs; affidavits of class members accompanying plaintiff's Motion for

---

1. This Memorandum is filed under Fed.R.Civ.P. 52 in lieu of formal findings of fact and conclusions of law.

2. Relief was granted in a similar attack on state recoupment of public assistance from federally awarded Old Age, Survivors and Disability Insurance ("OASDI") benefits in *Randle v. Beal* and *Fanty v. DPW*, Civil Action Nos. 73–1709 and 73–1282 (E.D.Pa., Slip Ops. filed May 17, 1976 and July 6, 1976), *reversed on other grounds*, 551 F.2d 2 (3d Cir. 1977).

In addition, some of the issues raised in these actions have been considered by the Pennsylvania state courts. See *Lynn v. Com. Dept. of Public Welfare*, 37 Pa.Cmwlth. 590, 391 A.2d 1093 (1978); *Tunnicliff v. Com. Dept. of Public Welfare*, 483 Pa. 275, 396 A.2d 1168 (1978).

3. The following persons intervened as plaintiffs: Lee Crocket, Carmen Torres, Marie Tygh, Hattie Smith, Elsie Mulligan, Anne Mae Thompson and Ruby Washington. Lee Crocket has since been voluntarily dismissed without prejudice, and Elsie Mulligan died.

Summary Judgment; affidavits attached to defendant's Motion for Summary Judgment; and appendices of exhibits containing pertinent DPW regulations and memoranda, and various departmental forms and documents relating to reimbursement from SSI benefits. The affidavits were submitted by plaintiffs to show that the Department's caseworkers and claims settlement agents engaged in coercive collection practices beyond the official policy and that this activity continues unabated today throughout the entire state.

The record in this lawsuit is now closed, and both parties have requested either summary judgment or judgment on the merits. Before discussing the legal arguments and evidence they marshal, we will briefly describe the public policy problem that pervades the dispute.

The Supplemental Security Income Program (SSI), Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., is a federally administered assistance program designed to meet basic subsistence needs of aged, blind and disabled individuals according to uniform eligibility standards and a national base payment level. As with most federal programs, there is a time lag between application for and delivery of the desired service. The General Stipulation states that the delay from the date of application for SSI to the receipt of the first check often exceeds six months. During this interim period, applicants for SSI have, by definition, no means of maintaining themselves. Consequently, they are eligible for and receive Public Assistance from the Pennsylvania Department of Public Welfare.

· This cash assistance is channeled through two programs, Aid to Families with Dependent Children (AFDC) and General Assistance (GA), and it continues until the individuals are determined eligible for and receive their first SSI check. That check, however, is not a monthly check. It is a lump sum SSI check which awards benefits retroactively to the month of application.

The lump sum SSI check, as well as the monthly SSI checks, include state funds as a supplement to the federal SSI payment level. Thus, individuals who receive both the public assistance grant (either from AFDC or GA) and the lump sum SSI check "double dip" into both state and federal funds. Because the state regards this "double dipping" as unfair to recipients who must live on one check and an unnecessary drain on the limited pool of available public assistance money, it seeks reimbursement from SSI recipients.

Prior to 1976, an additional consideration underlay the Department's reimbursement policy toward individuals who received both AFDC and SSI. At that time all income, including public assistance, was considered by the Social Security Administration in determining eligibility for SSI benefits. In the absence of an official reimbursement policy, interim public assistance benefits received would have resulted in a dollar for dollar reduction in the amount of the SSI grant, depressing that grant well below the subsistence level. Moreover, once the first SSI check arrived, the public assistance would have been terminated. Ultimately, the client would have received almost no SSI and no public assistance and would have again faced a protracted delay in getting the SSI benefits increased.

To forestall this hardship, the Department persuaded the Social Security Administration to treat the public assistance grant as a loan and exclude it in determining SSI eligibility. The Social Security Administration regarded the state assistance as a loan, however, only if the AFDC recipient signed a repayment/reimbursement agreement. Though Congress in 1976 exempted interim assistance based on need as a factor in determining eligibility for and the level of SSI,[4] the Department continues to use these agreements to obtain reimbursement from individuals who received AFDC, and this constitutes one of the practices that plaintiffs attack.

---

**4.** Citing the legislative history of Pub.L. 94–566, 90 Stat. 2667, the defendants claim that this exemption was inadvertent. See S.Rep.No. 1265, 94th Cong., 2d Sess. p. 29 *reprinted in* [1976] U.S.Code Cong. & Admin. News, pp. 5997, 6023.

There is no federal law denying states the right to seek reimbursement of state-administered welfare assistance. The Social Security Act provides, however, that SSI benefits may not be transferred, assigned or reached by legal process. Section 407 of Title 42 of the United States Code reads, in pertinent part:

Section 407. Assignment. The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Section 407 was specifically incorporated into the statutory provisions pertaining to the SSI program, see 42 U.S.C. § 1383(d)(1), and although it might be thought that the proscription applies only to private and not to governmental creditors, the Supreme Court held squarely in 1973 that state welfare departments also fall within its coverage. *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973).

The *Philpott* decision severely hampered DPW's efforts to recoup interim public assistance from SSI recipients, for it precluded the state from legally requiring reimbursement from the initial lump sum SSI check. Though voluntary reimbursement remained a permissible alternative, benefit levels under both the state and federal welfare programs were so low that individuals often found it necessary to spend the overpayments immediately in order to meet their daily needs.[5] In August, 1974, Congress granted relief to the states by adding the Interim Assistance Reimbursement Program to the Social Security Act. Section 1383(g)(1) of Title 42 (42 U.S.C. § 1383(g)(1) (1974)) reads in pertinent part:

Notwithstanding subsection (d)(1) of this section . . . the Secretary may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a state . . . from the benefits withheld an amount sufficient to reimburse the state . . . for interim assistance furnished on behalf of the individual by the state

. . . .

The legislative history of § 1383(g)(1) indicates that the IAR program was enacted primarily to insure that states would retain the incentive to provide interim public assistance to SSI applicants.[6] Under the pro-

---

**5.** The impracticality of voluntary reimbursement was cited by Congress when it made the IAR program a permanent fixture in 1976. See note 4, *supra*. The House Subcommittee on Oversight stated:

Interim Assistance Reimbursement is an essential service, particularly in view of the nearly month long processing times for SSI eligibility. The Subcommittee believes, however, that there may be problems in coordinating the payment of emergency interim assistance with the payment of regular benefits. For example, the Subcommittee has received reports from the City of New York that as much as $3.3 million may be lost because of the lack of a central Social Security Administration Coordinator in the City. As a result, an interim assistance check is sometimes issued at the same general time that a regular benefit check is being issued and the individual receives an overpayment. Because of the relatively low level of benefits, it is often impossible to recover fully these overpayments from the individual since the beneficiary is usually in desperate need of the funds and spends them immediately.

H.R.Rep.No.1296, 94th Cong., 2nd Sess. 1–2, reprinted in [1976] U.S.Code Cong. & Admin. News, pp. 1726, 1730.

Moreover, the affidavits of the named plaintiffs confirm that the overpayment is often used to obtain necessities. See, e. g., Affidavit of Carrie Moore, at ¶¶ 10–18.

**6.** The House Report No. 94–1296, [1976] U.S. Code Cong. & Admin.News, p. 1727, reports that:

The IAR program was established to alleviate hardships on potential SSI recipients resulting from delay in determination of SSI eligibility.

. . . . .

In its statutorily mandated report on the IAR program, the Department of Health, Education and Welfare recommended that the Interim Assistance Program be made permanent based on the demonstrated effectiveness and efficiency of the program.

Furthermore the Subcommittee on Oversight stated:

In the absence of this reimbursement provision, no State would have the incentive to

gram, states may enter into an agreement with the Secretary of Health, Education and Welfare pursuant to which the Secretary will, upon receipt of written authorization from an SSI applicant, forward that individual's lump sum SSI check to the state. The amount of interim assistance is then deducted and the balance of the initial check is sent to the recipient.

As implemented by the Secretary, the IAR program does not apply to reimbursement of AFDC benefits. "Interim Assistance" was defined in § 1383(g)(3) of Title 42 as "Assistance financed from state or local funds . . .", and the Secretary has interpreted this language to exclude assistance payments, such as AFDC, which are financed in whole or in part from federal funds. 20 C.F.R. 416.1906(b)(3) (1976).

Currently, the Pennsylvania Department of Public Welfare maintains a bifurcated system of recoupment. Allegedly in compliance with the IAR program, the state requires recipients of GA, a solely state funded program, to sign a PA 176S Reimbursement Authorization form as a condition of eligibility for assistance. This form authorizes the Secretary of HEW to pay the individual's initial lump sum SSI check directly to DPW. Because the benefits received from SSI are generally greater than those received in the GA program, the amount of state interim assistance is deducted from the lump sum check and the balance of the monies is forwarded to the client along with a notice of his right to appeal if he disagrees with the amount of the refund.

To collect reimbursement from individuals who received interim assistance through AFDC, a state-administered and jointly state and federally funded program, the Department uses an entirely different procedure. Upon applying for AFDC benefits, the individuals are required to sign a PA

176K Agreement and Authorization to Pay Claim form as a condition of eligibility for assistance. This agreement provides, in essence, that the state assistance is a loan which must be repaid by the recipient if funds come into his hands,[7] and it is printed on the same form that the Department previously used to dissuade the SSA from considering the interim assistance as income in computing SSI eligibility and award levels. By contrast to GA reimbursement under the IAR program, the SSA forwards the initial lump sum SSI check directly to the AFDC recipient and, consequently, the DPW must collect reimbursement directly from him. The DPW apparently does not receive from the SSA notice that the initial SSI payment has been disbursed; however, caseworkers inform applicants for AFDC benefits that they must notify the Department as soon as the initial lump sum SSI check arrives.

Pursuant to departmental regulations, responsibility for collection of SSI reimbursement claims is divided between the DPW's Bureau of Claims Settlement (CS) and County Boards of Assistance (caseworkers). The regulations assign caseworkers a secondary role. Generally, caseworkers are to take certain preliminary actions to secure the state's right to reimbursement. These actions include explaining to applicants and recipients their liability for reimbursement and obtaining from them the proper acknowledgements of that liability.[8] Primary responsibility for collection of reimbursement rests with the CS Bureau, and caseworkers are to refer claims to it when they are notified by the clients that they have received their initial SSI checks.[9] Caseworkers may accept payment of a reimbursement claim when offered by a client and no CS agent is available, but they are

make interim payments and it appears that the federal government would be liable for retroactive payments to eligible SSI applicants. *Id.* at 1729–30.

7. The PA 176K form is appended to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment as Exhibit i.

8. DPW Manual Section 3825.1, Exhibits D–3 and D–4, p. 18 to Defendant's Responses to Plaintiff's First Set of Requests for Admission.

9. Id.

not generally authorized to make collections.[10]

When a claim is referred to the CS Bureau, the CS agents either call or write the client and ask the client to come to their office. Occasionally, home visits are made. The General Stipulation states that, when contacting a recipient for the purpose of seeking reimbursement, CS agents are instructed to inform the recipients of the following: (1) that a certain amount of money is owed because of assistance granted pending receipt of SSI benefits; (2) that the recipient signed a PA 176K repayment/reimbursement agreement form; (3) that the recipient is legally obligated to repay the Department the amount claimed above; and finally (4) that upon request by the recipient, the CS agent will provide a computation of the amount owed to the Department. Although the CS agents are instructed that they have no authority to threaten a lawsuit or attachment, garnishment or other legal process to collect reimbursement from the SSI check, they are not instructed by the Department to inform AFDC recipients of the rights granted to them by the *Philpott* decision and Section 407. Nor are they instructed to advise AFDC recipients of any rights they may have to a hearing regarding the amount of reimbursement or the method of collection.

Not infrequently, caseworkers give applicants for interim assistance the wrong form to sign, and GA clients erroneously sign a PA 176K form. In this situation, the SSA forwards the initial lump sum SSI check directly to the GA recipient, and reimbursement is collected in the same manner used for AFDC clients.

Plaintiffs contend that the DPW's official policies regarding reimbursement of both GA and AFDC benefits violate section 407 of the Social Security Act (as applied to SSI by § 1383(d)(1)) and their constitutional rights to due process and equal protection.

Moreover, they claim that the caseworkers and CS agents often engage in coercive collection practices unauthorized by the Department regulations. Affidavits and answers to interrogatories submitted by the plaintiffs show that caseworkers instruct clients not to cash the initial lump sum SSI check, but rather to hold on to it until they are contacted by CS agents or to bring it to the Department.[11] Similarly, plaintiffs have adduced evidence that both caseworkers and CS agents threaten and harass recipients in violation of federal and state law.[12] Accordingly, plaintiffs seek monetary, declaratory, injunctive and notice relief.

Defendants contend not only that their reimbursement policies and practices are lawful and constitutional, but also that the court lacks jurisdiction over the subject matter or, alternatively, that this court should abstain from adjudicating the merits of the plaintiffs' complaint.[13]

## II. *Jurisdiction and Abstention*

Plaintiffs predicate jurisdiction in this Court on 28 U.S.C. § 1331(a) and 28 U.S.C. § 1343(3) or (4). Because we believe jurisdiction is properly invoked pursuant to § 1343(3), we see no need to discuss the other jurisdictional bases asserted by plaintiffs. Section 1343(3) provides, in pertinent part:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) to redress the deprivation, under color of any state law . . . of any right, privilege or immunity secured by the constitution of the United States or by any act of congress providing for equal rights of citizens . . . .

Twice within the past five years the Supreme Court has extensively analyzed the applicability of § 1343(3) to suits challeng-

---

10. Id., Sections 3825, 3825.1h.

11. See note 20 and accompanying text, *infra.*

12. See discussion at pp. 369–370, *infra.*

13. Earlier defendants objected to the standing of the plaintiff Welfare Rights Organizations to represent their members. After class certification was granted, defendants withdrew this objection.

ing state welfare regulations. In *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577, 587 (1974), the Supreme Court held that so long as a plaintiff alleges a constitutional claim of sufficient substance to support federal jurisdiction pursuant to § 1343(3), a district court may hear as a matter of pendent jurisdiction a claimed conflict between state law and the federal Social Security Act, even though this latter claim might not independently confer federal subject matter jurisdiction. However, the Supreme Court recently resolved a conflict between the circuits by deciding that a Supremacy Clause challenge to a state welfare regulation is not in and of itself a sufficient basis for federal jurisdiction under § 1343(3). *Chapman v. Houston Welfare Rights Organization* and *Gonzalez v. Young*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

Defendants contend that *Chapman* and *Gonzalez* control the instant dispute. We disagree. Here, plaintiffs have alleged constitutional claims independent of the Supremacy Clause. Specifically, plaintiffs argue that the DPW's reimbursement policies violate their rights to both due process and equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

With respect to equal protection, plaintiffs argue that the Department has no rational basis for seeking reimbursement for past assistance from them, but not seeking reimbursement from individuals who initially receive interim state assistance and subsequently receive Old-Age Survivors and Disability Insurance (OASDI) benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. OASDI benefits constitute the traditional form of Social Security based on wages paid into the Social Security Trust Fund for the requisite number of quarters. In the past, the Department had sought reimbursement from OASDI recipients, but it discontinued this policy shortly after the Supreme Court rendered the *Philpott* decision.[14]

With respect to due process of law, plaintiffs attack two aspects of the DPW's collection procedure. First, they contend that the Department's failure to inform them that SSI proceeds are immune from legal process results in an involuntary and unknowing waiver of their legal rights when repayment is made. According to plaintiffs, class members should be advised of the *Philpott* decision and the availability of legal assistance services during the collection process. Second, plaintiffs claim that they are entitled to a hearing regarding liability for and the amount of reimbursement prior to any collection attempt. Under the procedure currently in effect, a hearing is available after collection, but AFDC recipients are never advised that they have a right to it.[15]

■ Defendants contend that these constitutional claims are too insubstantial to confer federal subject matter jurisdiction under § 1343(3). For jurisdictional purposes, however, the measure of substantiality is not the likelihood of success on the merits. A constitutional claim is substantial if it is not "essentially fictitious" and "obviously frivolous"; a constitutional claim is insubstantial only if "previous decisions of this [Supreme] court . . . leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Hagans*, 415 U.S. at 537, 94 S.Ct. at 1379, quoting *Ex parte Poresky*, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

■ Keeping in mind this appropriate respect for constitutional rights, we cannot say that the equal protection and due process claims tendered by plaintiffs are so insubstantial that this court should not exercise jurisdiction over them pursuant to § 1343(3). See *Hagans*, 415 U.S. at 537–43, 94 S.Ct. 1372. We are unaware of, and

---

**14.** See DPW Memorandum No. 650 Supplement No. 636 (Oct. 19, 1973), attached as Exhibit vi to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment. See also *Randle v. Beal*, C.A.No. 75–1709 (E.D.

Pa.) (Slip Op. filed May 17, 1976) *reversed on other grounds* 551 F.2d 2 (3d Cir. 1977).

**15.** See General Stipulations, No. 26.

defendants have failed to identify, any judicial decisions specifically addressing the issues raised by plaintiffs and resolving them one way or the other. Nor can we say, after carefully reviewing plaintiffs' complaints, that they fail to state causes of action upon which relief can be granted or that this court should abstain from adjudicating the plainly federal questions they present.[16] Accordingly, we will consider the merits of plaintiffs' constitutional claims and exercise pendent jurisdiction over plaintiffs' federal statutory and state law claims. We address the pendent claims first.

### III. *Plaintiffs' Statutory Claims*

█ Though considered pendent for jurisdictional purposes, plaintiffs' statutory claims in fact form the backbone of this challenge to the DPW's SSI reimbursement policies and collection practices. Under the Supremacy Clause of the United States Constitution, an incompatibility between federal and state law must be resolved in favor of the overriding federal interest. Invoking this rudimentary principle, plaintiffs contend that the Department's reimbursement policies and practices conflict with the Social Security Act in five ways, three for the AFDC program and two for the GA program. We begin our discussion of plaintiffs' statutory causes of action with the alleged conflicts pertaining to the AFDC program.

### A. The AFDC Program

The federal statute which plaintiffs seek to vindicate is § 207 of the Social Security Act, 42 U.S.C. § 407. As noted earlier, that statute prohibits state welfare departments from requiring SSI recipients to assign or transfer their future SSI benefits and from using "legal process" to enforce reimbursement claims against their SSI proceeds.[17]

Plaintiffs argue first that the PA 176K form signed by AFDC applicants as a condition of eligibility for assistance constitutes a prohibited "assignment" or "transfer" of their SSI benefits to the Department.

#### 1. *The PA 176K Form is Not a Prohibited "Assignment" or "Transfer"*

█ By its terms, the PA 176K form is neither an assignment nor a transfer of SSI benefits. It is merely an agreement to repay the amount of interim assistance received. The first sentence of the PA 176K form states:

> In consideration of the assistance received and to be granted to or for me and to or for my spouse and unemancipated minor children pending receipt of money from [*SSI*] I hereby agree to pay to the Commonwealth of Pennsylvania, Department of Public Welfare, its successors or assigns, or its duly authorized agent, the amount of the assistance claim . . . .

Nowhere does the form limit the source of reimbursement to SSI benefits or purport to give the state a right to collect by legal process the SSI funds. The reference to receipt of SSI benefits merely marks the time of repayment.

We note further that, in practice, the PA 176K form does not operate as an assignment or transfer of future SSI benefits. The SSI checks are forwarded directly to the individual recipients, rather than to the Department, and the recipients frequently cash the checks and use the proceeds.[18] Therefore, we agree with the Pennsylvania state courts that PA 176K form is simply an agreement to repay public assistance furnished by the Department, not an assignment or transfer of SSI benefits. See *Tunnicliff v. DPW*, 483 Pa. 275, 396 A.2d 1168, 1171 (1978).

---

16. Defendants conceded at oral argument that abstention would be inappropriate if the Court found that plaintiffs had presented a substantial federal question. On the propriety of abstention in these circumstances, *see generally, New Jersey Educ. Ass'n v. Burke*, 579 F.2d 764 (3d Cir. 1978).

17. Section 407 is set out in full on page 363, *supra.*

18. See, e. g., Individual Stipulations Nos. 11–15 (Robert Smith) and Nos. 75–76 (Juanita Kinnard).

## 2. The PA 176K Form May Be Used As A Condition of Eligibility For Assistance

For similar reasons, we do not find the second conflict with the Social Security Act alleged by plaintiffs, that the PA 176K form is an additional and impermissible condition of eligibility for assistance. It is well settled that in jointly funded, federal-state welfare programs, states may not impose additional conditions of eligibility for assistance not explicitly or implicitly authorized by federal law. See generally, *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). Plaintiffs argue that the required signing of the PA 176K form is an impermissible condition of eligibility because the form constitutes in their view a prohibited "transfer" or "assignment" of SSI benefits. Having decided that the PA 176K form is merely a repayment agreement, we conclude that the Department may legally require AFDC applicants to sign it as a condition of eligibility for AFDC interim assistance and that this policy does not result in a denial of AFDC benefits to those persons who are "needy" and "dependent" as defined by the Social Security Act. See *Charleston v. Wohlgemuth*, 332 F.Supp. 1175 (E.D.Pa.1971), aff'd, 405 U.S. 970, 92 S.Ct. 1204, 31 L.Ed.2d 246 (1972). The requirement does not disqualify eligible individuals, but rather prevents AFDC recipients from obtaining duplicate assistance payments.

## 3. Legal Process

The third and final source of alleged conflict between the Social Security Act and the DPW's policies toward AFDC recipients involves the use of "legal process" to enforce reimbursement claims against the recipients' SSI benefits. It is plaintiffs' position that the circumstances surrounding the signing of the PA 176K form, as well as the defendants' actual collection practices, constitute the use of proscribed "legal process."

### a) The Department's Official Policy

Plaintiffs do not contend, and there is no evidence to suggest, that the DPW uses formal legal machinery to enforce reimbursement claims against SSI benefits. Rather, the official policy of the Department, as described in the General Stipulations, is to inform AFDC recipients that the PA 176K repayment agreements are legally binding, but not to advise them that after *Philpott* the agreements are legally unenforceable against SSI proceeds. Plaintiffs argue that the term "legal process" must be construed broadly to encompass this policy as well as the coercive collection practices in which they allege CS agents and caseworkers engage.

We agree with plaintiffs that Congress intended the term "or other legal process" to encompass implied or express threats of formal sanctions, as well as the sanctions themselves or formal legal machinery. Nevertheless, we conclude that the Department does not use prohibited legal process when it instructs AFDC recipients that they are legally obligated to repay the Department the amount of the interim assistance. By signing the PA 176K form, AFDC applicants enter into a loan agreement which commits them to reimburse the state the amount of public assistance they received. *Philpott* did not eliminate this underlying debt; the decision merely precluded states from enforcing the obligation against protected SSI funds.

Similarly, we conclude that the Department does not use prohibited legal process when it instructs AFDC recipients that the PA 176K forms are legally binding, but fails to disclose that the agreements are unenforceable against SSI proceeds as a result of the *Philpott* decision. To support their argument, plaintiffs rely heavily on the consolidated cases of *Randle v. Beal* and *Fanty v. DPW*, Civil Nos. 73–1709 and 73–1282 (E.D.Pa., Slip Ops. filed May 17, 1976; July 6, 1976), *reversed on other grounds*, 551 F.2d 2 (3d Cir. 1977). In those cases, Judge Fullam decided that the Department had used prohibited legal process in collecting reimbursement from OASDI recipients. Plaintiffs mark the following language from page six of Judge Fullam's opinion:

"This deliberate DPW policy of withholding information from welfare recipients, coupled with the collection practice of giving recipients the false impression that they have a legal duty to pay over their disability benefits, is tantamount to the use of 'legal process' to collect that money, which is prohibited by 42 U.S.C. § 407."

We believe that plaintiffs' reliance on *Randle* and *Fanty* is misplaced. Judge Fullam's remarks were addressed to the case of a welfare recipient who, prior to the *Philpott* decision, entered into an agreement with the DPW to reimburse it for past assistance grants by paying installments out of his newly-received federal disability benefits. At the time, pre-*Philpott* recipients were told that the Department had the right to reach that money by legal process if it were not paid over voluntarily. After *Philpott*, however, this statement of the law was clearly incorrect. Nevertheless, the Department deliberately refrained from notifying those recipients of the *Philpott* decision, and it continued to accept their installment payments even though they were made on the basis of misinformation given by the Department. This was the DPW practice which Judge Fullam found tantamount to the use of "legal process."

By contrast, plaintiffs here are not affirmatively misled into believing that they have a legal obligation to the state where none exists, at least under the Department's official policy. They are told that the PA 176K repayment agreement is legally binding and, in fact, it is. Undoubtedly, many of the AFDC recipients are unaware of the full panoply of their legal rights as debtors and their rights under section 407 in particular. But neither this fact nor section 407 imposes on the state an affirmative duty to inform them of these rights.. Section 407 and *Philpott* require only that the state be treated like any private creditor: the state may not deliberately misinform welfare recipients, but it has no legal obli-

gation to make a full disclosure of all their statutory or judicial rights.

b) The Alleged Pattern or Practice of Coercion

■ Having concluded that the Department's official policy is not violative of Section 407, we turn to plaintiff's contention that DPW employees commonly ignore the official policy and coerce AFDC recipients into making reimbursement from their SSI proceeds. The alleged coercion takes several forms: Plaintiffs claim that caseworkers instruct recipients not to cash the initial lump sum SSI checks but rather to bring them to the Department, that both caseworkers and CS agents threaten recipients with termination of future welfare benefits, and that CS agents actively discourage recipients from seeking available legal counsel. In addition, plaintiffs maintain that recipients are verbally harassed by means of repeated phone calls and intimidating home visits.

The only evidence of coercion submitted by plaintiffs is the affidavit testimony of several class members. While a few of these affidavits depict the sort of misconduct alleged by plaintiffs, most disclose only that the Department adhered to official policy by requesting repayment of the interim assistance and not disclosing the recipient's *Philpott* rights. Though plaintiffs claim that compulsion is inherent in any demand for payment by a governmental official, we believe that the official method of collecting reimbursement is not so intrinsically coercive as to constitute "legal process" within the meaning of section 407.

There is one collection practice, however, which we find widespread and unlawful. This practice consists of caseworkers admonishing recipients not to cash their initial lump sum SSI checks. Several affidavits submitted by plaintiffs attest to the frequency of this practice,[19] and defendants have introduced no evidence to counter them. By instructing recipients not to cash their lump sum SSI checks, caseworkers generate the impression that the SSI pro-

---

19. See, e. g., affidavits of named plaintiffs Emma Kinard and Carrie Moore; class members Carmen Rios, William Bunge, and Eva Harner, Plaintiffs' Exhibit XV.

ceeds are not protected funds and that legal sanctions may ensue if the recipient fails to make reimbursement from that particular check. We believe that this practice constitutes an implied threat of legal process and, accordingly, we declare it illegal and invalid.

### B. The GA Program

With respect to recoupment of GA benefits awarded pending receipt of SSI funds, plaintiffs allege virtually the same statutory conflicts with the Social Security Act as those they alleged with regard to AFDC reimbursement. The arguments have been slightly modified, however, to reflect the importance of the Interim Assistance Reimbursement Program, codified as Section 1383(g) of Title 42 of the United States Code. Congress enacted the IAR Program in 1974 to insure that states would retain the incentive to provide interim public assistance to SSI applicants.[20] The program permits states to enter into an agreement with the Secretary of HEW pursuant to which the Secretary will, upon receipt of written authorization from an SSI applicant, forward that individual's lump sum SSI check to the state. The written authorization used by the Pennsylvania DPW is a PA 176S form, and it is undisputed that this form, when signed by the GA applicant, acts as an assignment of his SSI benefits to the Department (to the extent of the amount of interim assistance received). Plaintiffs argue first that the IAR Program authorizes voluntary assignments only, and therefore signing of the PA 176S form cannot be made a condition of eligibility for assistance.

#### 1. *The PA 176S Form May Be Used as a Condition of Eligibility For Assistance*

██ In support of their argument that Section 1383(g)(1) only permits states to secure "voluntary" assignments, plaintiffs point out that Congress could have simply allowed the Social Security Administration to mail the recipients' SSI checks directly to the state welfare department without the

necessity of "written authorizations" from the recipients, but it chose not to enact such a provision. While this point is a fair observation, it is not dispositive, for there is no evidence that Congress ever considered such alternative language. A better way to ascertain Congress' intent, we submit, is to examine the legislative history of the statute. The House Subcommittee charged with responsibility for the IAR program said, in making the program permanent, that Congress feared states would abandon awards of interim assistance if they had no device to obtain reimbursement from the initial lump sum SSI check before the recipients spent the overpayments.[21] In our view, this legislative history shows congressional awareness of the impracticality of direct recipient reimbursement after *Philpott* and a desire to provide states with a workable mechanism for recouping interim assistance awarded pending receipt of delayed SSI benefits. Requiring GA applicants to assign the SSI overpayment as a condition of eligibility for assistance is fully consistent with both this objective and other provisions of the Social Security Act. See *Charleston v. Wohlgemuth*, 332 F.Supp. 1175 (E.D.Pa.1971). For these reasons, we reject plaintiff's assertion that the GA assignments are unlawful under Section 1383(g)(1).

#### 2. *Legal Process*

██ Similarly, we find no merit in plaintiff's contention that the department uses prohibited "legal process" when it collects reimbursement from GA recipients who have signed the PA 176K form instead of the PA 176S assignment form. In these circumstances, it is only inadvertent caseworker error which causes the wrong form to be signed, the initial lump sum SSI check to be forwarded directly to the GA recipient rather than to the Department, and collection to proceed on face-to-face basis. Above, we have stated that the Department does not use proscribed legal process when it instructs AFDC recipients that the PA

---

**20.** *See* note 6 and accompanying text, *supra.*

**21.** *See* note 6 and accompanying text, *supra.*

176 K forms are legally binding, but fails to disclose that the agreements are unenforceable against SSI proceeds as a result of the *Philpott* decision.[22] The same reasoning applies here. Moreover, unlike AFDC reimbursement, GA reimbursement is specifically authorized by the statutory exception set forth in Section 1383(g)(1). To hold that the state would lose its right to be reimbursed merely because the established procedure for signing the PA 176S assignment form was not followed is inconsistent with Congress' legislative intent. *Lynn v. Com., Dept. of Public Welfare*, 37 Pa.Cmwlth. 590, 391 A.2d 1093, 1094 (1978).

We do not conclude that the Department may use any means necessary to recoup its interim assistance from GA clients. A showing of a widespread pattern or practice of coercion or intimidation during the collection process would warrant relief in favor of plaintiffs. But here no such showing has been made. The affidavits submitted by plaintiffs indicate that sporadic abuses have occurred, but we cannot conclude on the basis of this evidence alone that the Department has been engaged in a pattern or practice of misconduct. Accordingly, we find no conflicts between the DPW's GA reimbursement efforts and the Social Security Act, and we turn to a consideration of plaintiffs' state law claims.

### IV. Plaintiffs' State Law Claims

Plaintiffs predicate their state law claims on the Department's own regulations and the pronouncement of the Pennsylvania State Courts that reimbursement from delayed Social Security benefits may be collected only through "fair means". The seminal authority for each of plaintiffs' contentions is *Good v. Wohlgemuth*, 15 Pa. Cmwlth. 524, 327 A.2d 397 (1974). There, the Pennsylvania Commonwealth Court held that a DPW caseworker violated Department regulations governing the collection of reimbursement by contacting a recipient and leading her to the bank in order to cash her SSI check. Noting that the regulations prohibit caseworkers from actively participating in the collection practice,[23] the Court ordered a refund of the monies that were improperly obtained. *Good*, 327 A.2d at 400–02.

█ A footnote in the *Good* opinion planted the seeds of the "fair means" test. In note 3, the Court remarked that it did not interpret *Philpott* to preclude reimbursement from SSI benefits so long as collection was achieved by "fair means other than legal process." *Good*, 327 A.2d at 399 n.3. Although the Court articulated no guidelines for distinguishing "fair" or "unfair" collection practices, later decisions invalidated reimbursements in which the department failed to disclose *Philpott* rights and misled recipients of delayed Social Security benefits other than SSI into believing that they had a legal obligation to make repayment from these benefits where no such obligation existed. *See St. Clair v. Department of Public Welfare*, 29 Pa. Cmwlth. 150, 370 A.2d 751 (1977) and *Wohlgemuth v. Armacost*, 18 Pa.Cmwlth. 394, 336 A.2d 455 (1975). Plaintiffs request us to follow these precedents and require the department to inform SSI recipients of all their legal rights, including not only *Philpott* immunity, but also the availability of free legal assistance.

In light of recent Pennsylvania State Court decisions, we cannot grant plaintiffs' request. The Supreme Court of Pennsylvania in *Tunnicliff*, 396 A.2d at 1171–73, ruled that the "fair means" standard is not violated by mere failure to disclose *Philpott* and its impact. *Accord*: *Lynn*, 37 Pa.Cmwlth. 590, 391 A.2d 1093. Noting that the *Good* decision was based upon unauthorized caseworker participation in the collection process, the Court implicitly suggested that only affirmative misconduct would offend its notion of "fair means."[24] *Tunnicliff*, 396 A.2d at 1171 n.6.

---

**22.** *See* pages 368 369 *supra.*

**23.** See Department of Public Welfare—Pa. Manual, §§ 3824.2, 3825.1(b)(c) and (h).

**24.** In our view, a violation of the Department's regulations would necessarily constitute affirmative misconduct. Thus, implicit in our holding

On the factual record now before us, we find only one instance of repeated affirmative misconduct by DPW employees. As mentioned above, the affidavits submitted by plaintiffs show that caseworkers routinely direct SSI recipients not to cash their lump sum SSI checks and to turn over those checks to the Department. The Department's regulations specifically assign primary responsibility for collection of reimbursement claims to the Claims Settlement Division; caseworkers are authorized only to accept a payment if offered by the debtor/claimant.[25] As *Good* makes clear, Pennsylvania law prohibits DPW caseworkers from taking an active role in the collection process. For this reason, we declare the aforesaid practice unlawful and invalid under Pennsylvania law as well as under section 407.

## V. *Plaintiffs' Equal Protection and Due Process Claims*

There remain plaintiffs' constitutional claims. Plaintiffs argue first that the Department denies them equal protection of the laws when it seeks reimbursement for interim assistance from them, but not from individuals who receive OASDI benefits under Title II of the Social Security Act.

It is clear that in the field of social welfare law differential classifications should be upheld if they are rationally related to a proper end. See *Dandridge v. Williams*, 397 U.S. 471, 485–87, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491, 501–02 (1970). Defendants maintain that their policy of seeking reimbursement from SSI recipients, but not from OASDI recipients, prevents double dipping into state funds and conserves the pool of public assistance money available for all needy individuals. Defendants point out that SSI is a "welfare" program financed by general tax revenues from both the state and the federal governments while OASDI is in the nature

of a "retirement" program and is financed partly from the recipients own past contributions. According to defendants, Congress did not intend to provide a windfall to SSI recipients by allowing duplicate assistance payments from both the state and federal coffers.

Exercising minimal scrutiny, as we must, we believe this differential treatment is legally permissible. The goal of the state policy is to permit only one resort to state *assistance* funds for all individuals at the time they are in need. Avoiding duplicate assistance payments is a legitimate state concern—indeed, one recognized by Congress when it enacted the Interim Assistance Reimbursement program—and the DPW's policy of seeking reimbursement from SSI, but not OASDI, recipients rationally serves this end.

Furthermore, we find no constitutional violation in the failure of the Department to inform plaintiffs of the *Philpott* decision or of the availability of free legal services during the collection process. *Philpott* itself was narrowly predicated on statutory grounds. The decision merely held that under section 407 state welfare departments could not use legal process to attach delayed social security benefits. Put most concisely, plaintiffs' argument is that the state government has an affirmative constitutional duty to advise them of this statutory right.

We recognize that plaintiffs receive low incomes and may possess little formal education, rendering them particularly susceptible to overbearing credit practices. See, e. g., *Swarb v. Lennox*, 314 F.Supp. 1091 (E.D.Pa.1970), aff'd, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972). Undoubtedly, Congress shared this perception when it enacted section 407. But we have not found, and plaintiffs have not cited, any precedent for imposing on the state a constitutional obligation to inform these debt-

---

is a rejection of plaintiffs' argument that Department regulations mandate disclosure of the *Philpott* decision and the availability of free legal counsel. *Accord: Lynn v. Com., Dept. of Public Welfare*, 391 A.2d at 1096.

**25.** Op. Cit. at §§ 3824.2, 3825.1(b)(c) and (h).

or/claimants that, as a creditor, the state may not resort to legal process to collect the valid debt. Nor is the state under an affirmative duty to advise plaintiffs of the availability of free legal services as part of the collection process. Consequently, we conclude that the DPW's reimbursement policies do not offend fundamental fairness or substantive due process.

Plaintiffs' final constitutional claim concerns procedural due process. Plaintiffs contend that they do not receive an adequate opportunity for a hearing to challenge their liability for and the amount of the Department's SSI reimbursement claim against them. Under Department regulations, SSI recipients are entitled to a hearing to contest the computation of the DPW's reimbursement claim. 55 Pa.Code § 275.1(a)(4)(i)(F). It is undisputed, however, that AFDC recipients never receive notice of this right. General Stipulations, No. 26. GA recipients are notified of their right to request a departmental hearing— either by accompanying notice, if the DPW sends them a refund check after deducting the amount of interim assistance, or by letter if no refund is due; but the hearing always occurs after collection.

The constitutional safeguard of procedural due process protects individuals from erroneous deprivation of their interests by governmental action. In the case of AFDC reimbursement, however, the state may not and does not use legal process to compel repayment. Thus, the decision to make repayment and the extent of repayment are determined by the individual recipient, not government compulsion. If the individual disagrees with the state's computation of its reimbursement claim, he always has the option to withhold the SSI proceeds.

Plaintiffs have cited no authority for the proposition that in this setting the recipients are legally entitled to notice of a hearing, and our independent research reveals no such precedent. Moreover, if the AFDC recipients were notified by CS agents that they had a right to a hearing to contest their liability, they might feel that the state could resort to this same mechanism to enforce reimbursement, thereby construing the notice as involving legal process and causing the very harm of which plaintiffs complain.

Unlike AFDC recipients, GA recipients do not receive their full checks directly from SSA, but rather receive from DPW only the balance due after the state deducts its claim. GA recipients are provided notice of and an opportunity for a fair hearing. Nevertheless, plaintiffs argue that this hearing should occur prior to collection of reimbursement.

In *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18, 33 (1976), the Supreme Court reasoned that identification of the specific dictates of due process generally requires consideration of three distinct factors: "First, the private interest that will be affected by the official actions; second, the risk of erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional safeguards; . . . and finally, the government's interest in the fiscal and administrative burdens that the additional or substitute procedure would entail."

If a pre-collection hearing were provided for GA recipients, the recipients would be forced to wait an even longer period of time for receipt of their refund. This result would follow because the initial lump sum SSI check is sent directly to DPW, rather than to the individual. Balancing the factors identified by the Supreme Court in *Mathews v. Eldridge,* we conclude that the post-collection hearing currently provided for GA recipients satisfies the dictates of procedural due process.

## VI. *Relief*

After careful consideration of the plaintiffs' claims, we have found only one of defendants' reimbursement practices to be unlawful, the active involvement of caseworkers in the collection process in contravention of section 407 and DPW regulations. Plaintiffs have requested not only monetary damages, but also declaratory, injunctive and notice relief.

In view of the sovereign immunity granted to the states by the Eleventh Amendment to the United States Constitution, we cannot fashion a retroactive award which would require the payment of funds from the Pennsylvania state treasury.[26] *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Hence, we may not order the restitution of SSI benefits wrongfully collected by DPW. Moreover, since we believe the state will respect a declaratory judgment issued by this court, we see no need for injunctive or notice relief.

---

**26.** Plaintiffs argue that the Pennsylvania Supreme Court abrogated the doctrine of sovereign immunity in Pennsylvania in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978). Because federal courts may not find a waiver of Eleventh Amendment immunity in the absence of clear and express authorization from the state, we disagree. Our reading of *Mayle* discloses only a clear and express waiver as to sovereign immunity from tort claims, the type of claims then before the court. We recognize that one federal district court has found a waiver of Eleventh Amendment immunity on the basis of the *Mayle* decision. *Greenfield v. Vesella*, 457 F.Supp. 316 (W.D.Pa.1978).