**In re Joe J. DIAS, Debtor.**

**Joe J. DIAS, Plaintiff,**

v.

**SACRAMENTO COUNTY WELFARE DEPARTMENT, Defendant.**

**In re Bob WILLIAMS, Debtor.**

**Bob WILLIAMS, Plaintiff,**

v.

**SACRAMENTO COUNTY WELFARE DEPARTMENT, Defendant.**

Bankruptcy Nos. 285–01936–B–7, 285–01937–B–7.
Adv. Nos. 286–0311, 286–0261.

United States Bankruptcy Court, E.D. California.

Feb. 20, 1987.

Bruce J. Hagel, Olson, Connelly & Hagen, Sacramento, Cal., for debtors Dias and Williams.

John Dodds, Sacramento County Counsel, L.B. Elam, County Counsel, Richard G. Llata, Deputy County Counsel, Sacramento, Cal., for Sacramento County Welfare Dept., defendant.

## MEMORANDUM OPINION AND DECISION

DAVID E. RUSSELL, Bankruptcy Judge.

### Introduction

These two cases represent yet another skirmish in the continuing battle between Social Security beneficiaries and state welfare agencies over the rights to payments from the Social Security Administration (SSA). The fact pattern and issues before the Court are the same as those in *Vazquez, Guerrero and Compton*, 42 B.R. 609 (Bankr.E.D.Pa.1984) (*Vazquez* I) which was reversed by the District Court, with the reversal being affirmed upon further appeal in *Vazquez, Guerrero and Compton*, 788 F.2d 130 (3rd Cir.1986) (*Vazquez* III).

### Statement of Facts

Both petitions in bankruptcy were filed on May 21, 1985. Prior thereto the debtors had applied for Supplementary Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* While waiting for their applications to be processed, the debtors applied for the more immediately available General Assistance benefits (GA) from the Sacramento County Welfare Department (SCWD). At SCWD's request, the debtors executed form SSP 14, the last one being executed by debtor Dias on October 17, 1984. The original of each executed form was sent to the SSA.

After the petitions were filed, the Appeals Council of the SSA approved the debtors' eligibility for SSI following remand by the United States District Court for the Eastern District of California. Thereafter, and in the following sequential order, SCWD received the debtors' first SSI checks directly from the SSA, deducted the claimed amounts of GA benefits previously paid to the debtors ($5,674.50 in the

case of Dias and $5,964.00 in the case of Williams), remitted the differences to the debtors ($4,297.33 and $3,996.30, respectively), the debtors were granted their discharges, the cases were closed and then reopened upon the debtors' applications to file complaints to determine the dischargeability of the SCWD debts, the debtors filed their complaints, and SCWD filed its answers.

SCWD was the only creditor listed on both of the debtors' schedules; on A–3 as unsecured. SCWD did not file a claim nor otherwise participate in either of the bankruptcy cases until it was served with the debtors' complaints. The SSI benefits were claimed as exempt by both debtors.

The debtors have now filed motions for summary judgment, requesting a determination that their debts to SCWD are discharged and requesting orders requiring SCWD to pay over the withheld SSI benefits to them, as was done in *Vazquez* I. Because the issues and the essential facts are the same, the motions were consolidated for hearing and decision.

### Discussion

The key problem in these SSI cases is the proper characterization of the transaction that occurred when the debtors executed form SSP 14 and the executed original was mailed by SCWD to the SSA. Once the nature of that transaction is correctly understood, the proper decision is easily reached by the application of general bankruptcy law. The two essential elements of the transaction are the subject matter and the intention of the parties.

The SSI benefits are the subject matter of the transaction. Like all Social Security benefits, they are federal funds created by Congress for the benefit of a limited class of natural persons, the distribution of which is strictly limited to the intended beneficiaries.[1] The SSA administers the Social Security program and distributes the SSI benefits under the aegis of the Secretary of Health, Education and Welfare.

The written agreement as set forth in form SSP 14[2] is the best evidence as to the intent of the parties. That form, and form PA 176–S discussed in the *Vazquez* cases, are essentially the same, and both were obviously drafted to comply with the regulations set forth at 20 C.F.R. § 416.1910.[3] That section of the Federal Regulations was promulgated by the Secretary of Health, Education and Welfare under the

1. 42 U.S.C., § 407, which applies to all Social Security benefits, including SSI benefits, states in pertinent part:

"Section 407. Assignment. The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

2. Form SSP–14 provides, in relevant part:

I, _____ declare that I have applied for the Supplemental Security Income/State Supplementary Program (SSI/SSP) with the Social Security Administration Office located in the County of Sacramento on _____.
This authorization is signed with a full understanding of the following: In consideration of the Interim Assistance paid to me, or on my behalf, by the County of Sacramento, I hereby authorize the Social Security Administration to make the first payment of SSI/SSP benefits to which I am determined eligible to the County of Sacramento. I further authorize the County to deduct from such payment the amount of Interim Assistance paid to me, or on my behalf, from the initial month of SSI/SSP eligibility or date of Interim Assistance application, whichever is later.
I understand that the County, after making the authorized deduction, will within ten working days from receipt of the benefit check, pay the balance, if any, to me.
It is further understood that in the event of disagreement, I shall have the right to a hearing from the State with respect to the amount deducted by the County from my initial SSI/SSP payment. The request for hearing must be filed with the State within 90 days of the date the County notifies me of the apportionment which has been made.

Signature of Interim Assistance Applicant
Address: _____
Eligibility Worker Signature: _____
Social Security Number of Applicant: _____
Case Number, if Applicable: _____

3. See *Vazquez* III, footnotes 3 and 6.

authority of 42 U.S.C. § 1383(g)(4), which specifies the agreement that a state must have with the SSA in order to receive the SSI benefits directly from the SSA. Thus, form SSP 14 is really an agreement between three parties, the debtor-SSI beneficiary, SCWD and SSA.

Since the subject matter of the subject transaction is a federally created fund and the intent of the three parties to the transaction is evidenced by a federally mandated form, the transaction cannot be analyzed without considering the federal policy and Congressional intent underlying that fund and that form. An excellent analysis of Congressional intent and federal policy for the purpose of our analysis is set forth in the case of *Moore v. Colautti*, 483 F.Supp. 357 (E.D.Pa.1979).

One of the major problems of the SSI program was the deleterious effect on the impecunious beneficiaries of the time lag between the application for benefits and the first benefit check. Although the general proscription against the assignment of Social Security benefits contained in 42 U.S.C. § 407 was specifically incorporated in the SSI program by 42 U.S.C. § 1383(d)(1), the SSA and state welfare agencies cooperated to help solve the time gap problem by permitting the states to collect SSI benefits directly from the SSI beneficiaries. Under this cooperative plan, the states would provide its locally derived funds to SSI applicants until they received their first SSI benefit check. Since the initial check included retroactive benefits, the states could usually recoup their limited welfare funds paid to the SSI beneficiaries during the gap period directly from those beneficiaries. However, the case of *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) directly held that the states were barred, like all others, by the anti-assignment provisions of 42 U.S.C. § 407. Congress responded in 1974 by enacting the Interim Assistance Reimbursement Program (IAR) 42 U.S.C. § 1383(g). Subparagraph (1) of that section specifically excepts the IAR program from the anti-assignment prohibition. See *Moore v. Colautti, supra*, pp. 362–64.

The primary reason for the IAR program was to encourage the states to provide interim assistance to SSI applicants during the gap period. It also promoted the efficient use of the limited federal and state funds for the relief of one of the most needy group of citizens while preventing that group from "double-dipping" into both funds. As the program was developed, the interim assistance provided by the states was treated as a loan by the states to the SSI applicants. Such loans would be repaid to the states by sending the first large SSI check directly to the state agency which would deduct the payments made during the gap period (the loan) from the check and remit the difference to the SSI beneficiary. *Moore v. Colautti, supra*, pp. 362–64.

With the foregoing background, the intent of the three parties to the SSP 14 agreement becomes quite clear. In simple contract terms, the SSI beneficiary assigned the appropriate portion of his rights in the SSI benefits to SCWD as security for the GA benefits advanced to him by SCWD during the gap period. Furthermore, the assignment was made not only with the knowledge of, but also with the encouragement of, the SSA as obligor of the SSI benefits, thus obviating the potential problems of a partial assignment of a contractual obligation and lack of notice to the obligor.

Long before the advent of the Social Security Act or Uniform Commercial Code (UCC) courts had recognized the nature of the right of SCWD in the SSI benefits. Such a right is known as an equitable lien, which is generally defined as an equitable right to have a fund or specific property applied in whole or in part to a particular debt, or merely a charge on property for the purpose of security. (51 Am.Jur.2d, Liens § 22.) The elements of an equitable lien, all of which are satisfied by the subject transaction, are that there be a debt or obligation owing by one person to another, a res to which the obligation attaches, that

the res can be identified or described with reasonable certainty, and an intent that the property serve as security for the payment of the debt or obligation. (51 Am.Jur.2d, *supra*, § 24.) Equitable liens have been recognized even when the property is not yet owned by the party making the contract, 51 Am.Jur.2d, *supra*, § 26, or when the obligation secured by the lien consists of future advances, 51 Am.Jur.2d, *supra*, § 33.

Neither the UCC nor the advent of bankruptcy should alter the relationships between the parties. First of all, federal law rather than state law should control the question of how a state welfare agency perfects its rights in federal funds. (See *Vazquez* III, p. 134 and ftnt. 4.) SCWD clearly complied with the federally mandated provisions of 42 U.S.C. § 1383(g)(4) and 20 C.F.R. § 416.1910.[4] Secondly, because of 42 U.S.C. § 407, there are no competing creditors that need to be notified of SCWD's security interest in the SSI benefits and therefore the UCC's concept of perfection by notice is not applicable to the transaction in question. Thirdly, the provisions of 42 U.S.C. § 407 defeats the "strong arm" provisions of 11 U.S.C. § 544, which is the primary means of avoiding equitable liens by the bankruptcy trustee. (See, e.g., *In re Pirsig Farms, Inc.*, 46 B.R. 237 (D.Minn.1985)). Finally, in weighing the policy of the Bankruptcy Code in providing a "fresh start" for debtors against the conflicting policies of the IAR program in efficiently utilizing limited welfare funds, providing much-needed assistance to SSI recipients during the gap period and, at the same time, limiting "double dipping," the scales are definitely weighted against the Bankruptcy Code policy.[5]

■ While this Court agrees with the *Vazquez* III court that federal law determines the nature of the transaction between the parties and that the state welfare agencies are entitled to retain the appropriate amount of the SSI benefits received from the SSA, it does not agree with the conclusion of that court that no debt existed between the debtors and the state welfare agencies that could be discharged in bankruptcy (*Vazquez* III, at page 134). There is no indication in either form PA 176 K[6] used in the *Vazquez* cases or form SSP 14[7] used in the cases before this Court that the intention of the parties was to substitute the SSA for the debtors as the obligor to the state welfare agencies.[8] Clearly, SCWD, at least, did not intend to give up its rights to collect from the debtor the GA benefits it paid to them under California law,[9] particularly if it were ultimately determined by the SSA that the debtors were not eligible for SSI benefits. Since a debtor creditor relationship existed at the time the petitions were filed herein, such obligations, not being an exception to discharge as provided in 11 U.S.C. § 523, were discharged under the provisions of 11 U.S.C. § 727(b).

■ In conclusion, the transactions between the debtors and SCWD were assignments[10] creating "perfected" equitable liens in the SSI benefits. As such, the SCWD liens are immune from the trustee's avoiding powers. Since the debtors' rights to avoid liens under 11 U.S.C. § 522(h) are derivative from those of the trustee, the debtors are also unable to avoid the liens.

4. Sending the original of Form SSP–14 to the SSA is also analogous to filing a U.C.C.–1 Form with the appropriate state officer to perfect a security interest under the U.C.C.

5. It seems clear that the debtors in the cases at bar, by listing SCWD as their only creditor and subsequently seeking a return of the SSI funds, filed bankruptcy for the sole purpose of "double-dipping" into the GA welfare fund of the County of Sacramento.

6. *Vazquez* III, ftnt. 6.

7. Endnote 2, *supra*.

8. Such a transaction is perhaps best characterized as a novation.

9. See, generally, California Welfare and Institutions Code, § 17403, which authorizes SCWD to collect paid GA benefits from after acquired property and income of the recipients.

10. Accord, *In re Trejo*, 44 B.R. 539 (Bankr.E.D. Ca.1984), *Vazquez* III.

Although the debtors' obligations to SCWD are discharged, the liens pass unaffected through the bankruptcy proceedings, 11 U.S.C. § 506(d). Partial summary judgment is granted to the debtors declaring their debts to SCWD to be discharged. The debtors' requests for orders requiring SCWD to turn over the withheld SSI benefits are denied. This memorandum opinion shall constitute findings of fact and conclusions of law. Counsel for SCWD shall prepare and submit judgments consistent with this opinion.