396 A.2d 1168

Leon TUNNICLIFF and Annabelle Tunnicliff, Appellants,

v.

COMMONWEALTH of Pennsylvania DEPARTMENT OF PUBLIC WELFARE, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 16, 1978.

Decided Nov. 18, 1978.

Reargument Denied Feb. 13, 1979.

276

Richard A. Brown, Legal Aid & Defender Assn., Towanda, for appellants.

Linda M. Gunn, Asst. Atty. Gen., Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

Appellants, Leon and Annabelle Tunnicliff, had been receiving federal assistance since April of 1973 under the now

defunct Aid to Disabled assistance program. On January 1, 1974, they were transferred to the rolls of the Supplemental Security Income program (SSI), a program jointly administered by both federal and state governments. 42 U.S.C. §§ 1381–1383(c) (1974). On or about January 25, 1974, appellants informed their caseworker at the Bradford County Board of Assistance that they had not yet received their SSI check, and sought temporary assistance from the state Department of Public Welfare (DPW).

Assistance was granted for one month and a "Loan Agreement" form[1] was signed by Mr. Tunnicliff which agreed to repay the loan. Similar one month loans were made in February and March and Loan Agreements were signed for those months. At that point, it became apparent that SSI benefits would be further delayed for quite some time and appellants applied for and received general assistance on a continuing basis until February 11, 1975.

In January of 1975, appellants informed their local board of DPW that they would soon receive a lump-sum check from the Social Security Administration paying them SSI benefits retroactively for the period beginning January, 1974. On January 15, 1975, appellants signed an "Agreement and Authorization to Pay Claim" form[2] obligating them to repay the amount of the interim assistance.

1. This form, a "PA 176–L," provides as follows:
"In consideration of a loan in the form of General Assistance received by me and to or for my spouse pending receipt of money from the Social Security Administration-Supplemental Security Income I hereby agree to pay to the Commonwealth of Pennsylvania, Department of Public Welfare, its successors or assigns, or its duly authorized agent, the amount of the loan.
"I further agree to notify my County Board of Assistance and to make payment immediately if the funds come into my hands."

2. This form, a "PA 176–K," provides:
"In consideration of the assistance received and to be granted to or for me and to or for my spouse and unemancipated minor children pending receipt of money from SSI Benefits, I hereby agree to pay to the Commonwealth of Pennsylvania, Department of Public Welfare, its successors or assigns, or its duly authorized agent, the amount of the assistance claim; that is, all assistance granted to or for me and/or to or for my spouse and unemancipated minor children pending the receipt of the moneys referred to above or the amount of

On January 28, 1975, appellants reported to the local board that they had received their lump-sum check, asked that their DPW assistance be discontinued, and inquired as to the amount they owed DPW. They were informed that they owed $2,705.50 (the amount of public assistance received by appellants from January 1, 1974 until February 10, 1975). Appellants returned later that day with a certified check for that amount, and paid it to the Bradford County Board.

Subsequently, appellants were informed by legal counsel that, according to said counsel's interpretation of a United States Supreme Court case, *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), DPW could not legally enforce their (appellants') agreements to repay their interim assistance loans. Appellants then filed a claim with DPW for the refund of the $2,705.50 and requested a "Fair Hearing." 62 P.S. § 423 (1968). Following the hearing, the hearing examiner for DPW denied the claim, which denial was upheld by per curiam order

moneys received after deduction of legal fees and costs incidental to the recover of said moneys, whichever is the lesser amount.

"I hereby acknowledge that all legal fees and incidental costs are entirely my responsibility and cannot be charged to the Department of Public Welfare.

"I hereby direct my attorney or representative to pay to the Department of Public Welfare such moneys as described above as may come into his hands. This direction is irrevocable and acknowledged by me to be legally binding.

"I further agree to notify my County Board of Assistance and to make payment immediately if the funds come into my hands.

"In order to carry out the purpose of this agreement, I do hereby authorize the prothonotary of, or any attorney of, any court of record of Pennsylvania or elsewhere, to appear for and to enter judgment against me for the sum of Two Thousand Dollars ($2,000.00) with or without declaration, with costs of suit, release of errors, without stay of execution, and with fifteen percent (15%) added for collection fees.

"It is further agreed that if the assistance claim as defined above is less than Two Thousand Dollars ($2,000.00) I shall be liable to pay only the lesser amount plus costs and collection fees. This judgment shall be collected as other judgments. I further agree that my real estate may be sold on a writ of execution. I hereby waive and release all relief from any or all appraisement, stay or exemption laws of any state or of the United States, now in force or hereafter to be passed."

of an equally divided Commonwealth Court. This appeal is from that per curiam order.

Appellants base their claim for a refund on 42 U.S.C. § 407 (1974) which provides:

The right of any person to any future payment under [the Supplemental Security Income program][3] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment or other legal process, or to the operation of any bankruptcy or insolvency law.

*Philpott v. Essex County Welfare Bd., supra,* interpreted section 407. In *Philpott,* the petitioner had received state public assistance in New Jersey, and had signed an agreement to reimburse the state if he subsequently acquired real or personal property. Petitioner was awarded retroactive federal disability insurance benefits and a lump-sum check for some $1,800.00 was deposited for him in a bank account. Respondent, the State of New Jersey, sued to reach the bank account under the agreement to reimburse. The Supreme Court of the United States, in reversing the New Jersey Supreme Court, held that section 407, and the Supremacy Clause of the United States Constitution precluded the state from reaching the federal disability payments paid to petitioner. They stated:

The moneys paid as retroactive benefits were "moneys paid . . . under this subchapter"; and the suit brought was an attempt to subject the money to "levy, attachment . . . or other legal process."

. . . We see no reason why a State, performing its statutory duty to take care of the needy, should be in a preferred position as compared with any other creditor. 409 U.S. at 415, 93 S.Ct. at 592.

Appellants argue they are entitled to a refund because the methods used by DPW in collecting were tantamount to use of legal process and therefore the debt was violative of

**3.** Section 407 was made applicable to SSI benefits by 42 U.S.C. § 1383(d)(1).

section 407 and *Philpott.* Specifically, appellants maintain that the failure of anyone in the agency to advise them that, under *Philpott,* DPW could not reach their SSI benefits by legal enforcement machinery, rendered the collection of the debt equivalent to use of the legal process. Alternatively, appellants contend that the collection methods violated the so-called "fair means" test developed by our Commonwealth Court.[4] This test scrutinizes the means employed to collect the debt owed DPW and, if found unfair to the debtor, invalidates the payment of that debt. We disagree with both of these contentions.

Initially we note that *Philpott* does not require the result urged by appellants. *Philpott* merely holds that, since states are treated as any other creditor for purposes of section 407, *legal process* cannot be used by the states to reach protected funds. This decision does not, however, obviate the underlying obligation of the debtor who remains liable for the debt, nor does it prohibit the use of nonlegal means to reach protected funds.

In the instant case the payment made to DPW by appellants was voluntary even though they may have been under the impression that they were legally obligated to pay the debt. The fact is they *were* so obligated! The instruments signed by appellants committed them to repay the interim assistance. They did not delineate the *source* of that repayment.[5] Had appellants received an inheritance or won the lottery, these sources could have been reached *even by legal process* to enforce the obligation imposed by the loan agreements, and *Philpott* does not suggest otherwise. The

4. The cases in which this test was developed and applied are *Good v. Wolgemuth,* 15 Pa.Cmwlth. 524, 327 A.2d 397 (1974); *Wolgemuth v. Armacost,* 18 Pa.Cmwlth. 394, 336 A.2d 455 (1975); and *St. Clair v. Dep't. of Public Welfare,* 29 Pa.Cmwlth. 150, 370 A.2d 751 (1977).

5. Although the PA 175–K form did refer to repayment upon receipt of SSI benefits, this reference was as to *time* of repayment—nothing in either form limited the source of reimbursement to SSI benefits. Further, a reading of the forms, both PA 176–K and PA 176–L, indicate beyond doubt that they did not operate, contrary to appellants' assertion, as an assignment of future SSI benefits.

mere failure of DPW to inform appellants that they might assert their *Philpott* rights and resist the collection of the debt by use of the legal process from the one specific source—the SSI benefits—does not render the payment involuntary.[6] We cannot accept appellants' position that DPW has an affirmative duty to inform its debtors of methods of evading their legitimate debts. To hold otherwise would provide a windfall to those eligible for federal benefits but whose federal benefits are delayed, thus encouraging "double-dipping" at the expense of the taxpayers.

Indeed, the double-dipping problem has been recognized by Congress who has provided a method by which states can be directly reimbursed for providing interim assistance to an individual awaiting SSI benefits. 42 U.S.C. § 1383 (g)(1), "Reimbursement to states for interim assistance payments," states "notwithstanding subsection (d)(1)[7] . . . the Secretary may, upon written authorization of an individual, withhold benefits due with respect to that individual and may pay to a State . . . from the benefits withheld an amount sufficient to reimburse the State . . . ."

The legislative history of this enactment clearly demonstrates an intention on the part of Congress to provide a convenient method for the states to obtain reimbursement for interim assistance payments. Wilbur Mills, (D.Ark.), a

---

**6.** We have carefully examined the record in this case and find that the worst DPW can be accused of is failure to inform appellants of *Philpott* and its impact. We are not confronted, therefore, with a situation such as existed in *Good v. Wolgemuth, supra* note 4, wherein DPW caseworkers took an active role in affirmatively misleading the debtor/claimant. Such active participation prompted the Commonwealth Court to coin the "fair means" test. Here, the DPW caseworkers merely informed appellants how much they owed (and they certainly still owed the debt) and accepted payment when tendered. The regulations of DPW specifically provide that caseworkers are to cooperate with the Claims Settlement Division and are to accept payment if the debtor has the money and offers repayment. Department of Public Welfare-PA Manual, §§ 3824.2, 3825.1(b)(c) and (h).

**7.** 42 U.S.C. § 1383(d)(1) (which places SSI benefits under the protection of 42 U.S.C. § 407.)

prime mover of the SSI program, illuminated the purpose of the reimbursement provision. He states:

> The motion which I have offered includes a Senate amendment affecting the Supplemental Security Income (SSI) program. *This provides authority for the Federal government to reimburse States for assistance provided to individuals who have applied for but have not yet received SSI benefits.* Existing law provides that an eligible individual shall be paid from the month of his application. During the early months of the program some applications have been substantially delayed and the applicants have needed immediate help. *If that help was provided by a State or local welfare agency, that agency has had to look to the individual for repayment from the retroactive check that he received when his benefits were approved. This method of collection has proved unsatisfactory and a more direct approach is generally thought desirable.* The provision simply allows the retroactive payment to be made to the States or localities if the applicant has so chosen instead of to the applicant. *I have no doubt that such an election would be a prerequisite to the receipt of emergency non-federal aid.* (Emphasis added). 120 Cong.Rec. 26090 (1974).

Contrary to appellants' argument, *neither* the reimbursement provision itself *nor* its legislative history suggest that the method therein provided is the exclusive method of permissible reimbursement. In fact, the legislative history indicates precisely the opposite by pointing out that states have been using other *less satisfactory* means of reimbursement and by offering an *alternative*. It does not purport to eliminate the other means, so long as they do not run afoul of section 407 and *Philpott* by using legal process against protected funds. Further, the legislative history shows that Congress approved conditioning the granting of interim assistance with the requirement that applicants sign agreements to reimburse the state.[8]

**8.** While we do not find the collection process used in this case objectionable, DPW could avoid the problems presented here by

In finding that the collection methods used by DPW in the instant case do not violate section 407 or the *Philpott* decision, we avoid a complicated problem. Regular social security benefits are in the nature of pension benefits and are based on payments made by the individual while employed. SSI benefits, on the other hand, are based on the need of the recipient. Individuals who are aged, blind or disabled are eligible for SSI only if they also fall below established income or resource ceiling levels.[9] Were we to require DPW to refund appellants' reimbursement payment, their income and/or resource levels would have exceeded the levels in effect during the period in question, resulting in an overpayment of SSI benefits. This would present the problem of whether or not the Social Security Administration could bring suit against appellants for refund of the overpayment.[10]

For the foregoing reasons, we hold that the signing of the "Loan Agreement" and "Agreement and Authorization to Pay Claim" forms and the non-disclosure of *Philpott* "rights" to appellants, without more, were methods that were neither "tantamount to legal process", nor did they render the reimbursement of the DPW interim assistance involuntary.[11] Therefore, both the spirit and the letter of 42 U.S.C. § 407 and *Philpott* have been fully complied with.

following the method provided for in 42 U.S.C. § 1383(g)(1), and by requiring, as Senator Mills suggested, that an election be made under that provision as a prerequisite to receipt of interim assistance pending the start of SSI benefits.

9. According to testimony given by a representative of the Social Security Administration the income ceiling for the time period in question was $210.00 a month per couple and the resource level was $2,250.00 per couple.

10. We also note that 42 U.S.C. § 1383(a) provides, in relevant part, "whoever . . . (3) having knowledge of the occurrence of any event affecting (A) his initial or continued right to any such benefit [under the SSI program] . . ., conceals or fails to disclose such event . . . shall be guilty of a misdemeanor . . . ."

11. To the extent that *Wolgemuth v. Armacost, supra* note 4, and *St. Clair v. Dep't. of Public Welfare, supra* note 4, suggest that the mere non-disclosure of *Philpott* rights to recipients of interim assistance is

■ Appellants finally contend that the Bradford County Board of Assistance subjected them to invidious and irrational classifications, thereby violating the Equal Protection Clause of the Constitution of the United States by practicing a reimbursement scheme as to SSI benefits but not as to "regular" social security benefits. Applying the Equal Protection Clause of the Fourteenth Amendment, the United States Supreme Court has consistently granted great leeway to the States in the formulation and operation of social and economic legislation. "If the classification [alleged to be in violation of Equal Protection] has some 'reasonable basis,' it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Idaho Dep't. of Employment v. Smith*, 434 U.S. 100, 98 S.Ct. 327, 328, 54 L.Ed.2d 324 (1977), citing *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369 (1911). In this case, there are several rational bases for the classification. Regular social security benefits are of a pension-retirement nature and the source of these regular social security benefits are employee and employer contributions made while the recipient was employed. SSI benefits are of a welfare-subsistence nature and are financed by general federal and state revenues. Moreover, as previously noted, the SSI program specifically contemplated that states could seek reimbursement from recipients of interim assistance. Therefore, as the classification is proper, the collection policies of DPW do not violate the Equal Protection Clause.

Order affirmed.

ROBERTS, NIX and MANDERINO, JJ., concur in the result.

violative of the "fair means" test or is tantamount to legal process, these cases are disapproved.