In re Warren George GILLESPIE, Debtor.

Warren George GILLESPIE, Plaintiff,

v.

CHERRY CREEK NATIONAL BANK, Defendant.

No. 84 J 0559.

United States Bankruptcy Court, D. Colorado.

Aug. 30, 1984.

Edd C. Gillespie, Hawthorne & Meconi, Canon City, Colo., for plaintiff.

Ruth M. Schley, Cogswell & Wehrle, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came on for trial on the Plaintiff/Debtor's Amended Complaint to Avoid Preferential Transfer and to Return Exempt Funds to the Bankruptcy Estate.

On June 4, 1984, the Plaintiff ("the Debtor") filed a petition in bankruptcy under Chapter 13.

On December 7, 1982, the Debtor obtained a loan from the Defendant ("Bank") in the sum of $2,268.80, which was to be paid in twenty-four (24) monthly installments of $112.64 (See Defendant's Exhibit A) beginning January 15, 1983. On June 16, 1983, after the Debtor had missed the May and June, 1983, installments, the Bank deducted $112.64 from the Debtor's checking account for the May, 1983, installment. No prior notice of this "set-off" was given to the Debtor, but he was sent a debit slip the same day the set-off was accomplished. The Debtor never made any further direct payments on the loan, but the Bank did continue to deduct the sum of $112.64 on July 12th, August 15, September 9, October 5, and November 8, 1983, and on January 9, February 6, March 20, April 10, and May 7, 1984. (See Plaintiff's Exhibit 1). Apparently there was a similar set-off in January, 1984, although the exhibit does not show it.

At no time did the Bank give prior notice of its intent to off-set the Debtor's checking account, and likewise the Debtor, even though he was receiving the concurrent debit slips and his monthly checking account statements, never protested the procedure. This was so, even though such off-sets were, through the ignorance of the Debtor, causing several checks of the Debtor to bounce each month, for which the Bank charged a $15.00 service fee for each such check. (See Plaintiff's Exhibit 2).

The Debtor here seeks to have the set-offs made on March 7, April 5, and May 7, 1984, returned to the Debtor as preferential transfers.

The Bank challenges the Debtor's standing to bring this action unless this Court finds that the funds were exempt under 42 U.S.C. § 407. This is because the Debtor can only recover a set-off in accordance with 11 U.S.C. 522(h) which provides:

> The Debtor may void a transfer of property of the Debtor or recover a set-off to the extent that the Debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> (1) such transfer is avoidable by the trustee under § 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under § 553 of this title; and
>
> (2) the trustee does not attempt to avoid such transfer.

The exemption contained in 42 U.S.C. § 407 provides in part:

> None of the monies paid ... under this sub-chapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or the operation of any bankruptcy or insolvency law.

■ The evidence showed that all of the deposits of the Debtor's checking account, with the exceptions noted *infra*, were direct deposits of his social security payments. A deposit on September 28, 1983, of $300.00 was a loan or gift from the Debtor's sister. The deposits of $150.00 and $806.25 on October 3, 1983 and October 17, 1983, respectively, were the proceeds of sales of some of the Debtor's household goods. Although not involved in this case, Debtor claimed these sale proceeds as exempt under § 13–54–102(1)(e), C.R.S. How-

ever, the proceeds from the sale of exempt property are not likewise exempt except in the case of a homestead exemption under § 38–41–201, C.R.S. Those proceeds are specifically exempt for one (1) year under § 38–41–207, C.R.S.

There is no doubt that, except for the three deposits discussed, *supra*, the funds in the Debtor's account were exempt under 42 U.S.C. § 407.

The next question is from what are these funds exempt? Section 407 specifies that they are exempt from "execution, levy, attachment, garnishment, or other legal process."

██ Several cases have perserved the "sanctity of social security benefits by holding that not only are such funds immune from actual "legal process", but are also preserved against the implied or expressed threats to use "legal process". *See, e.g., Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), and *Tunnicliff v. Commonwealth Department of Public Welfare*, 483 Pa. 275, 396 A.2d 1168 (1979), and *Moore v. Colautti*, 483 F.Supp. 357, *aff'd*, 633 F.2d 210 (D.C.Pa.1979). However, the question in this case is whether the set-off procedure used by the Bank was "legal process". I hold it was not. There was no resort to the courts or any other governmental machinery by the Bank in the set-off procedures utilized. Rather, set-off is a self-help procedure originating in ancient Roman law and continuing to date in American jurisprudence. *See, Bohack v. Borden, Inc.*, 599 F.2d 1160 (2nd Cir.1979). Thus, because set-off is not a "legal process", social security benefits are not exempt from its reach.

██ This does not mean the Debtor herein had no defense to the Bank's procedure. All he had to do was close his checking account at the Bank and open a new account with another institution. He chose not to do this. He also chose to acquiesce in the procedure. The Court can only conclude that the Debtor, through his inaction for almost a year, agreed to the Bank's action and waived any exemption he may have had under 42 U.S.C. § 407. *Matavich v. Vudak*, 4 Ohio App.3d 228, 447 N.E.2d 1311 (1982).

Thus, the Debtor has failed to bring himself into the purview of 11 U.S.C. § 522(h) and accordingly, the Bank's Motion to Dismiss made at the conclusion of the Debtor's case must be granted. It is, therefore,

ORDERED, that the within case be and hereby is dismissed, with prejudice, each party to bear its own costs.