788 F.2d 130
 14 Collier Bankr.Cas.2d 599, Bankr. L. Rep. P 71,097
In re VAZQUEZ, GUERRERO AND COMPTON, Debtors.
VAZQUEZ, Agustin Guerrero, David R., and Compton, Barry A., Appellants,
v.
COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE.
 No. 85-1393.
 United States Court of Appeals,
Third Circuit.
 Argued March 6, 1986.
Decided April 11, 1986.
 
 David A. Scholl (argued), Lehigh Valley Legal Services, Inc., Allentown, Pa., for appellants/debtors.
 Jason W. Manne (Argued), Asst. Counsel, Pennsylvania Dept. of Public Welfare, and Barry M. Hartman, Deputy General Counsel, Harrisburg, Pa., for appellee.
 Before ALDISERT, Chief Judge, and SEITZ and ADAMS, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Chief Judge.
 
 
 1
 This appeal requires us to determine whether reimbursement authorizations signed by appellants created a debt that was discharged by appellants' Chapter 7 bankruptcy proceedings. Appellants signed the authorizations pursuant to an agreement between themselves and the Commonwealth of Pennsylvania requiring reimbursement to the Commonwealth for general assistance (welfare) benefits appellants received pending approval and payment of Supplemental Security Income (SSI) benefits. For reasons stated below, we hold that the authorization does not constitute a debt discharged in bankruptcy and that the Commonwealth is entitled to retain the reimbursement payments.
 
 I.
 
 2
 Appellant debtors, Vazquez, Guerrero, and Compton, filed bankruptcy petitions under Chapter 7. During the pendency of the proceedings, but prior to the receipt of their discharges in bankruptcy, the Social Security Administration determined that appellants were eligible to receive SSI benefits. Prior to receipt of the SSI benefits, appellants had applied for and received welfare benefits from appellee, the Commonwealth's Department of Public Welfare (DPW). DPW, through its General Assistance Program, provides interim assistance to persons awaiting a determination of their eligibility for SSI benefits. As a condition of receiving the interim assistance, the Commonwealth required appellants to sign a reimbursement authorization, form PA 176-S. This agreement provided that the Secretary of Health, Education, and Welfare (sic) would make the first payment of SSI benefits directly to DPW; DPW then would deduct the amount of state welfare paid and send appellants a check for the remainder, if any.[1]
 
 
 3
 Appellants listed the amount of state interim benefits they had received on their bankruptcy schedules as debts owed to the Commonwealth. Prior to receiving their bankruptcy discharges, the Secretary of Health and Human Services mailed appellants' initial check for SSI benefits to DPW. DPW then deducted the amount of the interim assistance and remitted the remainder to appellants. Subsequently, appellants received their discharges in bankruptcy, including the debts they had listed as owing to the Commonwealth, with no objection by the Commonwealth.
 
 
 4
 Pursuant to their bankruptcy discharges, appellants requested that DPW remit the funds it had withheld. DPW refused and appellants then sued DPW for violations of 11 U.S.C. Sec. 524(a) (attempting to collect a discharged debt) and requested return of the withheld funds. The bankruptcy court, 42 B.R. 609, held in favor of the debtors, but was reversed by the district court. Debtors now appeal.
 
 II.
 
 5
 Appellants make two arguments that they contend entitle them to reimbursement of the funds withheld by the Commonwealth. First, they maintain that the Commonwealth's actions violate two fundamental principles of bankruptcy law: (1) a bankruptcy discharge is complete, except for the nine exceptions listed in 11 U.S.C. Sec. 523, and thus Pennsylvania has undermined the efficacy of the discharge by keeping funds that do not fall under any of the enumerated exceptions and (2) the debtors must receive a "fresh start" following their bankruptcies, which appellants cannot receive because Pennsylvania has seized post-petition assets to satisfy pre-petition claims. Additionally, appellants contend that the reimbursement authorization is merely an authorization and does not function, in effect, as a state law assignment, thus extinguishing the underlying debt. Because these issues implicate the interpretation and application of legal precepts, our review is plenary. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir.1981).
 
 III.
 
 6
 Initially, we must confront the Commonwealth's assertion that the eleventh amendment prohibits federal court jurisdiction over the subject matter of this lawsuit. Pennsylvania contends that the eleventh amendment precludes federal jurisdiction for two reasons: (1) because this case does not implicate the Bankruptcy Code, the statutory waiver of immunity contained in the Code, 11 U.S.C. Sec. 106, is not applicable and (2) an action to recover money rightfully withheld by Pennsylvania cannot subject the Commonwealth to the jurisdiction of the federal courts. Brief for appellee at 8. Again, because this issue implicates the interpretation and application of legal precepts, our review is plenary. Universal Minerals, 669 F.2d at 101-02.
 
 
 7
 The issues involved in this appeal clearly implicate the Bankruptcy Code. Appellants allege that Pennsylvania has refused to give effect to the bankruptcy discharges they received, relying on 11 U.S.C. Sec. 524(a). Determining whether, first, a debt existed and, subsequently, whether that debt was discharged are questions central to the functioning of the Bankruptcy Code. Regardless of the court's answers to those questions, we have jurisdiction to make the initial inquiries.
 
 
 8
 The Bankruptcy Code contains a provision on the waiver of sovereign immunity:
 
 
 9
 (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.
 
 
 10
 (b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.
 
 
 11
 (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity--
 
 
 12
 (1) a provision of the title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and
 
 
 13
 (2) a determination by the court of an issue arising under such a provision binds governmental units.
 
 
 14
 11 U.S.C. Sec. 106. By their terms, subsections (a) and (b) do not apply because the Commonwealth never filed a claim against the debtors. Therefore, the reach of subsection (c) is at issue.
 
 
 15
 Appellee relies on In re Ramos, 12 B.R. 250 (Bankr.N.D.Ill.1981), to support its argument that Sec. 106 does not bar an assertion of sovereign immunity in a suit by debtors to recover funds withheld by a state department of welfare to offset interim assistance payments. Precedent in this jurisdiction, however, is to the contrary.
 
 
 16
 In the similar situation of a debtor seeking to recover overpayments of old age benefits that the Social Security Administration recovered by deductions from subsequent benefit checks, we have held that Sec. 106 barred a sovereign immunity defense. Lee v. Schweiker, 739 F.2d 870, 873 (3d Cir.1984). We relied on In re Neavear, 674 F.2d 1201 (7th Cir.1982), which held that Sec. 106(c) "waives the sovereign immunity ... with respect to questions relating to the dischargeability of debts owed to the government." Id. at 1204.
 
 
 17
 Similarly, in Gardner v. Pennsylvania, Department of Public Welfare, 685 F.2d 106 (3d Cir.), cert. denied, 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982), in considering the issue of the avoidance of liens held by Pennsylvania, we interpreted Sec. 106 broadly. We held that Sec. 106(c) applied to the case even though the lien avoidance provision did not use the words "creditor", "entity", or "governmental unit." Id. at 108. Additionally, we concluded that Congress intended to bind the states by a cause of action arising under federal law, as evidenced by Sec. 106(c), and thus the eleventh amendment was no bar to the action. Id. at 109.
 
 
 18
 Pursuant to the broad interpretation given to Sec. 106(c) and because this appeal involves the issue of dischargeability of debts, we hold that the Commonwealth's claim of sovereign immunity is without merit. We turn now to appellants' substantive arguments.
 
 IV.
 
 19
 The authorization for states to receive reimbursement for interim assistance payments made to SSI applicants is found in 42 U.S.C. Sec. 1383(g).[2] Regulations contained at 20 C.F.R. Secs. 416.1901-.1922 further define the interim assistance reimbursement (IAR) scheme.
 
 
 20
 On its face, the reimbursement authorization signed by appellants removes their control over their first payment of SSI benefits, leaving them a right to receive only the amount of benefits remaining, if any, after the Commonwealth deducts the amount of interim assistance paid. This surrender of rights in and control over the initial SSI benefits payment is made conclusive by the federal regulation making the reimbursement authorization, in effect, irrevocable. 20 C.F.R. Sec. 416.1906.[3] Thus, the IAR system creates a direct payor-payee relationship between the Secretary and the Commonwealth, with the appellants exercising control over payment only to the extent of the overage.
 
 
 21
 Thus, the reimbursement authorization has the effect of a common law assignment.[4] Appellants have rights in their initial SSI checks only to the extent of any overage; they have transferred their rights to payment to the Commonwealth. The Commonwealth, therefore, can look only to the Social Security Administration for payment, and not to appellants.[5]
 
 
 22
 Pursuant to the Bankruptcy Code, therefore, no debt between appellants and the Commonwealth existed that could be discharged. The Code defines a debt as "liability on a claim." 11 U.S.C. Sec. 101(11). "Claim" means a right to payment. Id. at Sec. 101(4)(A). The Commonwealth having no right to receive payment from appellants, it could not, and did not, file a claim against appellants. No debt existing between the parties, the Commonwealth was entitled to retain the reimbursement for the interim assistance payments made to appellants.
 
 
 23
 Appellants, however, rely on a Pennsylvania state court decision to argue that the reimbursement authorizations leave appellants with rights in their initial SSI check. In Tunnicliff v. Pennsylvania Department of Public Welfare, 483 Pa. 275, 281 n. 5, 396 A.2d 1168, 1171 n. 5 (1978), the Supreme Court of Pennsylvania concluded that the predecessor forms to the reimbursement authorization, forms PA 176-K and PA 176-L, did not constitute assignments, thus permitting benefit recipients to retain rights in their checks. Tunnicliff, however, is inapposite because the court was interpreting agreements that required only that the recipient agree to repay the interim assistance; the form did not authorize a direct payment from the HHS Secretary to the Commonwealth.[6] The recipient therefore had complete control over the initial payment and was free to determine when, how, or if he would repay the interim assistance.
 
 
 24
 As a final effort to avoid the effect of the reimbursement authorizations, appellants also argue that the Social Security Act prohibits the Commonwealth from divesting benefit recipients of their rights in their benefit checks. Appellants rely on 42 U.S.C. Sec. 407:
 
 
 25
 (a) Inalienability of right to future payments
 
 
 26
 The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 
 
 27
 (b) Inamendability of section by inference
 
 
 28
 No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.
 
 
 29
 As a direct congressional response to problems created by Sec. 407, Sec. 1383(g)(1) expressly negates the effect of Sec. 407 in the context of interim assistance reimbursements. Subsection 1383(d)(1) makes "section 407 ... apply with respect to this part to the same extent as [it applies] in the case of subchapter II of this chapter." Section 1383(g)(1), however, provides: "Notwithstanding subsection (d)(1) of this section [the Secretary may reimburse the state]." See also Moore v. Colautti, 483 F.Supp. 357, 363-64 (E.D.Pa.1979) (discussion of relationship between Sec. 407 and IAR program), aff'd without opinion, 633 F.2d 210 (3d Cir.1980).
 
 
 30
 In sum, we have held that under the applicable federal law and regulations the reimbursement authorizations have the effect of a common law assignment that extinguishes any debt that existed between the Commonwealth and appellants. Accordingly, we need not consider whether the authorization also constitutes an assignment under state law.
 
 
 31
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 The exact wording of the authorization is:
 For and in consideration of assistance granted to me by the Pennsylvania Department of Public Welfare from State funds for basic needs until I receive Supplemental Security Income, I authorize the Secretary of Health, Education and Welfare to make the first payment of Supplemental Security Benefits for which I am determined to be eligible, for and on my behalf, to the Pennsylvania Department of Public Welfare.
 I further authorize the Pennsylvania Department of Public Welfare to deduct from such first payment the amount of State assistance paid to me in the interim, and after making such deduction, promptly pay the balance, if any, to me.
 It is understood that in the event of disagreement with the amount the Department of Public Welfare claims for interim assistance paid to me, I have the right to a hearing by the Department.
 App. at 27A.
 
 
 [2]
 More particularly, Sec. 1383(g)(1) provides:
 Notwithstanding subsection (d)(1) of this section and subsection (b) of this section as it relates to the payment of less than the correct amount of benefits, the Secretary may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State (or a political subdivision thereof if agreed to by the Secretary and the State) from the benefits withheld an amount sufficient to reimburse the State (or political subdivision) for interim assistance furnished on behalf of the individual by the State (or political subdivision).
 Section 1383(g)(4) enumerates the arrangements a state must have with the Secretary before the Secretary will make reimbursement.
 
 
 [3]
 The regulation states:
 Your authorization for us to withhold your SSI benefit payment, to repay the State for interim assistance the State gives you, is effective when we receive it, or (if our agreement with the State allows) when we receive notice from the State that it has received your authorization. It remains in effect until--
 (a) We make an SSI benefit payment on your claim:
 (b) We make a final determination on your claim (if your SSI claim is denied, the denial is the final determination, unless you file a timely appeal as described in Subpart N of this part):
 (c) You and the State agree to terminate your authorization; or
 (d) If earlier than the event in paragraph (a), (b), or (c) of this section, the date (if any) specified in your authorization.
 
 
 [4]
 Although we decide this case on the basis of federal, not state, law, we note that the reimbursement authorizations met the common law definition of an assignment. See Restatement (Second) of Contracts Sec. 317(1) ("An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.")
 
 
 [5]
 Although appellants contend that the Commonwealth has no right of recourse against the Secretary for payment, they offer no support for this statement. We note that nothing either in the statutes or regulations prevents a suit by a state for payment
 
 
 [6]
 Form PA 176-K provided, in relevant part:
 In consideration of the assistance received and to be granted to or for me and to or for my spouse and unemancipated minor children pending receipt of money from SSI Benefits. I hereby agree to pay to the Commonwealth of Pennsylvania, Department of Public Welfare, its successors or assigns, or its duly authorized agent, the amount of the assistance claim; that is, all assistance granted to or for me and/or to or for my spouse and unemancipated minor children pending the receipt of the moneys referred to above or the amount of moneys received after deduction of legal fees and costs incidental to the recovery of said moneys, whichever is the lesser amount.
 Tunnicliff, 483 Pa. at 278 n. 2, 396 A.2d at 1169 n. 2 (emphasis supplied). Similarly, form PA 176-L stated:
 In consideration of a loan in the form of General Assistance received by me and to or for my spouse pending receipt of money from the Social Security Administration-Supplemental Security Income I hereby agree to pay to the Commonwealth of Pennsylvania, Department of Public Welfare, its successors or assigns, or its duly authorized agent, the amount of the loan.
 I further agree to notify my County Board of Assistance and to make payment immediately if the funds come into my hands.
 
 
 [483]
 Pa. at 278 n. 1, 396 A.2d at 1169 n. 1 (emphasis supplied)