**Rosie FRAZIER, Plaintiff,**

v.

**MARINE MIDLAND BANK, N.A., Defendant.**

**Robert Abrams, Attorney General of the State of New York, Intervenor.**

**No. Civ.–87–128C.**

United States District Court, W.D. New York.

Dec. 30, 1988.

Neighborhood Legal Services, Inc. (William F. Mastroleo, of counsel), Buffalo, N.Y., for plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber (Paul K. Stecker, of counsel), Buffalo, N.Y., for defendant.

Robert Abrams, Atty. Gen. of the State of N.Y. (Patrick O. McCormack, of Counsel), Buffalo, N.Y., for intervenor.

CURTIN, District Judge.

This is an action for injunctive and declaratory relief and for damages brought under § 207 of the Social Security Act, 42 U.S.C. § 407, and the Supremacy Clause of the United States Constitution, Article VI, Cl. 2. Pending before the court are plaintiff's motion for summary judgment and defendant's motion to strike plaintiff's affidavit and cross-motion for summary judgment, all pursuant to Fed.R.Civ.P. 56.

The undisputed facts as set forth in the record can be briefly stated as follows. On April 9, 1985, plaintiff's niece executed an installment loan agreement with an auto dealer with plaintiff as co-obligor. This loan was subsequently assigned to defendant Marine Midland Bank [Marine]. In July, 1985, plaintiff signed an agreement to open a checking account with Marine, authorizing Marine to use moneys in that account to offset any indebtedness she may have to Marine.[1] The terms of that agreement did not provide for direct deposit of any funds into plaintiff's account. In October, 1986, plaintiff and her co-obligor de-

---

1. The specific provision of the agreement provides:

   If you owe us money, we can use the money in your account to pay the debt, even if withdrawing the money causes an interest penalty or if you have a joint account. If we charge your account, we will send you a notice. Exh. C attached to Item 18.

faulted on the loan, leaving an unpaid balance of $8,534.15. Item 18, p. 2. Marine exercised its right of setoff, and sent notices the same day those setoffs were made. *See* Item 18, ¶ 5, and Exhs. C–1 and C–2 attached thereto.[2]

Plaintiff commenced this action on behalf of herself and all others similarly situated, but has abandoned her demand for class relief. Item 13, ¶ 4. Plaintiff claims that Marine's setoffs against her account violated the anti-attachment provision of the Social Security Act, 42 U.S.C. § 407(a),[3] because her account was comprised entirely of Social Security benefits. Item 1, ¶¶ 15, 25. Plaintiff also claims that New York Banking Law § 9–g(1),[4] which prohibits bank setoffs against accounts to which Social Security benefits are direct-deposited, violates the Supremacy Clause of the United States Constitution, Article VI, Cl. 2, because it allows attachment of Social Security benefits deposited by means other than by direct deposit, in contravention of Congressional intent in enacting 42 U.S.C. § 407. *Id.*, ¶¶ 28–30. Finally, plaintiff claims that §§ 9–g(2) and (3) violate the New York State Constitution by allowing for the deprivation of property without adequate notice and opportunity to be heard. *Id.*, ¶¶ 31–37.[5]

Defendant contends that plaintiff's motion for summary judgment must be denied since it is supported only by the affidavit of her attorney, who has no personal knowledge of the facts alleged. Item 19, p. 6. Defendant also contends that it did not violate the anti-attachment provision of the Social Security Act since a bank's exercise of its right of setoff does not constitute the use of "execution, levy, attachment or other legal process" under 42 U.S.C. § 407(a). *Id.*, pp. 7–11. Defendant further contends that plaintiff's claim under the Supremacy clause must fail since Marine's right of setoff did not arise by operation of statute but by contract with plaintiff, and thus no conflict between federal and state law is presented. *Id.*, pp. 11–12. With regard to plaintiff's state constitutional claim, defendant contends that this court should decline to exercise pendent jurisdiction in the absence of a valid federal claim, or in the alternative should abstain from deciding the state law question. *Id.*, pp. 12–13. Finally, defendant contends that should the court reach the claim under the state constitution, that claim must be dismissed for lack of "state action." *Id.*, pp. 13–16.

By order of this court dated July 20, 1987, the application of the State of New York to intervene pursuant to 28 U.S.C. § 2403(b) was granted. The State has submitted an affidavit in opposition to plaintiff's motion for summary judgment, and in defense of the constitutionality of § 9–g of the New York Banking Law, which supports Marine's position that no conflict between state and federal law, and thus no Supremacy Clause issue, is presented in this case. Item 16.

*42 U.S.C. § 407(a)*

■ As an initial matter, the court will address plaintiff's claim that the setoff by Marine violated § 407(a) of the Social Se-

---

2. The setoff was executed in two steps due to availability of funds in plaintiff's account. The first setoff debited plaintiff's account by $216.00 on January 14, 1987, and the second setoff debited plaintiff's account by $790.00 on January 28, 1987. *See* Exhs. C–1 and C–2, attached to Item 18.

3. 42 U.S.C. § 407(a) provides:
   The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

4. New York Banking Law § 9–g(1) provides:

1. No banking institution shall assert, claim or exercise any right of set off against any deposit account into which social security or supplemental security income payments are deposited pursuant to an agreement with such banking institution which provides that such payments be deposited directly into such account without presentation to the depositor at the time of deposit.

5. In her complaint, plaintiff also asserted a claim that Marine failed to give notice of the setoffs in violation of New York Banking Law § 9–g(2). *See* Item 1, ¶ 18. At oral argument of the summary judgment motions, heard by the court on July 8, 1988, counsel for plaintiff stipulated to the withdrawal of that claim.

curity Act. Pursuant to the Supremacy Clause, § 407 prevents creditors, acting under the authority of state law, from reaching bank accounts containing social security benefits. *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 417, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973); *Harris v. Bailey*, 675 F.2d 614, 615 (4th Cir.1982). By insulating social security benefits from assignment or seizure, § 407 attempts to insure that recipients have the resources necessary to meet their most basic needs. *United States v. Devall*, 704 F.2d 1513, 1516–17 (11th Cir.1983). However, when the debtor's ability to care for herself is not implicated, § 407 need not be invoked, *id.* at 1517, and that section does not prohibit "offsets" against social security benefits that do not impact the level of funds which the recipient receives from the federal government. *Lamb v. Connecticut General Life Ins. Co.*, 643 F.2d 108, 111 (3d Cir.1981).

■ Under these general guidelines, it is clear that Marine's setoff did not violate § 407(a). A bank's right to setoff

> grows out of the contractual relationship existing between the depositor and the bank which arises at the time the depositor delivers and commits money to the bank's custody.... The right of a bank to apply deposits to extinguish a debt owed to it by a depositor is referable to principles of equity and in some states receives additional support from statutory law....

*Westerly Community Credit Union v. Industrial National Bank*, 103 R.I. 662, 667–68, 240 A.2d 586, 589–90 (1968), *quoted in Fletcher v. Rhode Island Hospital Trust National Bank*, 496 F.2d 927, 929 (1st Cir. 1974); *see also Bohack Corp. v. Borden*, 599 F.2d 1160, 1164–65 (2d Cir.1979). Marine's right to setoff thus arose by operation of the agreement entered with plaintiff when she opened her checking account and not by authority of New York Banking Law § 9–g or any other state law. Furthermore, it has been held that a bank's

use of its contractual setoff procedure to settle a depositor's indebtedness is not the type of "legal process" contemplated by § 407(a). *In re Gillespie*, 41 B.R. 810, 812 (Bankr.D.Colo.1984).

> There was no resort to the courts or any other governmental machinery by the Bank in the set-off procedures utilized. Rather, set-off is a self-help procedure originating in ancient Roman law and continuing to date in American jurisprudence. Thus, because set-off is not a "legal process", social security benefits are not exempt from its reach.

*Id.* at 812. Furthermore:

> Bank setoff is an extrajudicial self-help remedy based on general principles of equity. It allows a bank to apply general deposits of a depositor against a depositor's matured debt. Courts have found that this right arises from the contractual debtor-creditor relationship created between depositor and bank when an account is opened.

*Daugherty v. Central Trust Co.*, 28 Ohio St.3d 441, 504 N.E.2d 1100, 1104 (Ohio Sup. Ct.1986). In the instant case, plaintiff essentially urges the court to read into 42 U.S.C. § 407 an exemption from the common law, extrajudicial creditor's remedy of setoff which was not included in the statute when Congress drafted or amended it.[6] Also, Marine's setoff of plaintiff's checking account did not "impact the level of funds the [plaintiff] receives from the federal government," *Lamb*, 643 F.2d at 111; plaintiff continued to receive her social security benefit checks, and had only to close her checking account at Marine and open an account at another institution in order to avoid a setoff of funds. *See In re Gillespie*, 41 B.R. at 812. Moreover, the record shows that all deposits made to plaintiff's checking account with Marine between July 19, 1985 (the date on which plaintiff opened her account) and January 6, 1987 (the date on which plaintiff made her last deposit prior to the setoffs) were in-branch teller transactions consisting primarily of cash.

---

**6.** Section 407 was enacted August 14, 1935, as ch. 531, Title II, § 207, 49 Stat. 624, and amended August 10, 1939, as ch. 666, Title II, § 201, 53 Stat. 1362, and April 20, 1983, as Pub.L.No. 98–21, Title III, § 335(a), 97 Stat. 130.

Indeed, out of some eighty-five deposits made during that period, only eleven included checks, and only one of those checks was issued by the government. *See* Item 18, ¶¶ 7–8, and Exhs. E–1 through E–11 attached thereto. It is thus beyond dispute that the social security benefit funds in plaintiff's account were, at the very least, "intermingled" with funds from other sources, and it was therefore not unreasonable for defendant to treat those funds as alienable by operation of its contractual right to setoff rather than as inalienable "moneys paid or payable" under the Social Security Act.

Accordingly, since there is no genuine issue of material fact as to plaintiff's claim under 42 U.S.C. § 407(a), summary judgment is entered dismissing that claim pursuant to Fed.R.Civ.P. 56(c).

*Supremacy Clause*

Plaintiff also claims that § 9–g of the New York Banking Law is in conflict with 42 U.S.C. § 407 and thus is constitutionally void under the Supremacy Clause of Article VI of the Constitution. According to plaintiff, the effect of § 9–g is to impermissibly impede the operation and congressional objectives of § 407, since it allows a bank to setoff funds derived from social security benefits which were not "direct deposited" into a recipient's account.

■ A state law is in conflict with a federal statute, and void under the Supremacy Clause, if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *accord Finberg v. Sullivan,* 634 F.2d 50, 63 (3d Cir.1979). Under this test, the court must examine first the purposes of the federal law and second the effect of the operation of the state law on these purposes. *See*

*Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

■ As discussed above, the purpose of § 407 is to insure that a beneficiary has sufficient resources to meet her basic needs, and this is accomplished by allowing uninterrupted access to moneys received as benefits. *Finberg,* 634 F.2d at 63. The immediate effect of § 9–g of New York's Banking Law is to prohibit banks from setting off against any depository account which is subject to an agreement between the depositor and the bank for the direct deposit of social security or supplemental security income benefit payments, and to provide same-day notice of setoffs against any other accounts. *See* Exh.B, pp. 4, 8, 16, 19, 22, attached to Item 16. Such an effect does not impede, modify, or conflict with the purposes of § 407; rather, § 9–g supplements federal law by creating a defense mechanism for depositors, where none had previously existed, against a bank's right of common law setoff. *See* Item 16, ¶¶ 17–23, and Exh. B attached thereto. That mechanism insures the ultimate welfare of the social security benefits recipient by providing a means of insulating those benefits from a bank's setoff procedures. The fact that § 9–g has the additional effect of allowing setoff against funds derived from social security payments deposited in an account by the recipient herself (either before or after cashing her Social Security checks) does not in itself significantly interrupt the recipient's access to benefits so as to constitute an unavoidable impediment to the accomplishment of Congress' objectives in enacting § 407. Moreover, the Secretary's regulations accompanying § 407 interpret that section as clearly protecting benefits prior to payment to the recipient,[7] whereas § 9–g operates to give limited protection to payments already on deposit. Such a result does not impermissibly conflict with the

---

7. The Secretary's regulations provide, in relevant part:

[T]he Social Security Administration shall not certify payment of supplemental security income benefits to a transferee or assignee of a person eligible for such benefits under the Act. The Social Security Administration shall not certify payment of supplemental security income benefits to any person claiming such payment by virtue of an execution, levy, attachment, garnishment, or other legal process or by virtue of any bankruptcy or insolvency proceeding against or affecting the person eligible for benefits under the Act.

20 C.F.R. § 416.533 (1988).

goal of § 407 to insure that social security recipients "have the resources necessary to meet their most basic needs." *Devall,* 704 F.2d at 1516–17.

Accordingly, there being no genuine issue of material fact as to plaintiff's claim under the Supremacy Clause, summary judgment is entered dismissing that claim.

*Due Process Under the New York State Constitution*

Plaintiff's final claim is that the notice provisions of New York Banking Law § 9–g(2) and (3), denied her due process in violation of Article 1, § 6, of the New York State Constitution. Since the court has already entered summary judgment dismissing plaintiff's federal claims under 42 U.S.C. § 407 and Article VI, Cl. 2, of the federal Constitution, plaintiff's claim under state constitutional law should be dismissed as well pursuant to the doctrine enunciated in *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

In accordance with the foregoing, defendant's motion for summary judgment is granted, and plaintiff's complaint is dismissed in its entirety.

SO ORDERED.