649 A.2d 838

**Mary A. THOMAS,**

v.

**BALTIMORE CITY DEPARTMENT OF SOCIAL SERVICES.**

**No. 135, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 30, 1994.

Reconsideration Granted Dec. 20, 1994.

James A. Mayhew (Legal Aid Bureau, Inc. on the brief), Towson, for appellant.

Kathy F. Crosby, Staff Atty. (Catherine M. Shultz, Asst. Atty. Gen., and J. Joseph Curran, Jr., Atty. Gen. of Maryland on the brief), Baltimore, for appellee.

Argued before WILNER, C.J., and BLOOM, MARVIN H. SMITH (retired, Specially Assigned), JJ.

WILNER, Chief Judge.

Mary Thomas had been receiving public assistance benefits from the State of Maryland through its General Public Assistance (GPA) program since 1984. In June, 1992, Ms. Thomas was declared eligible for Federal Supplemental Security Income (SSI) benefits, retroactive from May, 1989. In accordance with applicable Federal law and an agreement that had been entered into between the State and the Federal Department of Health and Human Services, the Social Security Administration, which administers the SSI program, sent the first two checks covering the retrospective SSI payments to the Baltimore City Department of Social Services (DSS)—the agency through which Ms. Thomas had been receiving GPA benefits. DSS deducted and retained from those checks the full amount of GPA benefits that had been paid to Ms. Thomas for the period covered by the retroactive SSI benefits—May, 1989–May, 1992.

Ms. Thomas protested the amount of the deduction. She did not deny the right of DSS to *some* reimbursement, nor did she contest its right to full reimbursement under *Federal* law. She contended, however, that its right to reimbursement is limited by *State* law. That is the issue before us. Ms.

Thomas lost her case both before an administrative law judge and in the Circuit Court for Baltimore City. Regrettably for her, she shall lose it here as well.

To understand the point in dispute, it is necessary to understand the nature of the GPA and SSI programs and the relationship between them, so we shall start there.

GPA is a State program of temporary public assistance created in 1975 through the enactment of Md.Code art. 88A, § 65A. Section 65A(a) required the Social Services Administration, a unit within the State Department of Human Resources, to establish and implement a program of State-funded assistance to Maryland residents "who are temporarily in need but not eligible for any other State or federal category of assistance...." Eligibility and all other requirements not set forth in the statute were to be established by regulation. § 65A(c).

SSI is a Federal program designed to provide supplemental income to aged, blind, and disabled persons having less than a prescribed minimum of other resources. It is part of the broader Social Security program and is authorized by 42 U.S.C. §§ 1381–1383d.

For our purposes, the essential relationship between the two programs was well and succinctly described by the Second Circuit Court of Appeals in *Rivers by Rivers v. Schweiker,* 692 F.2d 871, 872 (2d Cir.1982):

"Because the determination of SSI eligibility by the [Social Security Administration] often takes more than one year, many States ... have voluntarily agreed to provide cash assistance payments to individuals during the period between the filing of an SSI application and the receipt of initial SSI benefits. Fearful that states would not provide interim relief without some guarantee of reimbursement, Congress in 1974 provided a mechanism called the Interim Cash Reimbursement Program (IAR), 42 U.S.C. § 1383(g) (Supp.1982), whereby states could recoup interim assistance benefits paid to SSI applicants. To take advantage of the IAR, a state must (1) enter into a formal reimbursement

agreement with the Federal [Department of Health and Human Services], and (2) obtain written authorization from the individual applying for SSI benefits permitting the Federal [Department] to withhold the individual's initial SSI check and pay to the state an amount sufficient to reimburse for interim assistance provided the individual."

This description is fully consistent with both § 1383(g) and with the regulations adopted by the Department of Health and Human Services to implement it. *See* 20 C.F.R. Ch. III, Subpart S, §§ 416.1901—416.1910. *See* also *Tunnicliff v. Com., Dept. of Public Welfare,* 483 Pa. 275, 396 A.2d 1168, 1171–72 (1978).

State law authorizes Maryland to participate in the Interim Cash Reimbursement Program. *See* Md.Code art. 88A, § 15. It has done so by entering into an agreement with the Department of Health and Human Services consistent with the controlling law and regulations and by requiring SSI applicants, as a condition to receiving interim GPA benefits, to sign an authorization permitting the initial SSI checks to be sent to the State agency (here, DSS) and DSS to retain an amount sufficient to provide full reimbursement for the interim GPA benefits it has paid.

Ms. Thomas signed such an authorization in January, 1987.[1] It provided, in pertinent part:

---

**1.** Why this authorization was signed in January, 1987 is not clear. Ms. Thomas applied for and began receiving GPA benefits in November, 1984. She received those benefits continuously until December, 1988 and then from March, 1989 to June, 1992. Her first application for SSI benefits was in May, 1989. That application was denied in July, 1989. A second application, which eventually proved successful, was filed in November, 1990. Neither party has made this an issue, probably because it has no direct bearing on the amount of reimbursement retained by DSS. The SSI benefits commenced, retroactively, from May, 1989, and no deduction was, or could have been, made for benefits paid before then. We shall assume that the authorization was requested and signed in anticipation of an SSI application. Indeed, at oral argument we were informed that every applicant for GPA benefits is required (1) to sign such an authorization, and (2) if eligible, to apply for SSI benefits.

"FOR AND IN CONSIDERATION of the prompt payment of State interim assistance (assistance furnished to or on behalf of applicants for supplemental security income financed from State funds for basic needs during the period in which applications are pending), I/we hereby authorize the Secretary of Health and Human Services to make the first payment of supplemental security income benefits ... to which I/we [am/are] determined to be eligible to receive, for and on my/our behalf, to the State of Maryland

. . . .

I/we further authorize the State to deduct from such payments an amount sufficient as reimbursement for interim assistance paid to me/us; and after making such deduction, the State shall promptly pay the balance, if any, to me/us."

As noted, appellant's application for SSI benefits was approved in June, 1992, retroactive from May, 1989. Giving effect to the Interim Payment Reimbursement Authorization signed by appellant in January, 1987, the Social Security Administration sent the first two checks, totaling $14,897, for the retroactive SSI benefits to DSS. DSS deducted and retained $6,911 as full reimbursement for the GPA benefits paid to appellant during the three-year period and sent its own checks for the balance of $7,564 to appellant.

Appellant protested the amount of the deduction. Her complaint arises solely from State law, in particular art. 88A, §§ 65A(e) and 76. In a nutshell, she maintains that, under those statutes, the reimbursement applicable to any month cannot exceed an amount that would cause the balance of the SSI payment for that month, when coupled with the GPA benefit received for that month, to be less than an amount declared by the State to be her minimum need.

Section 65A(e) is part of the section authorizing the GPA program. It provides that, in determining an individual's eligibility for GPA and in determining the amount of assistance an individual receives, the Social Services Administration "may not consider monetary or in-kind contributions that are up to the difference between *the State's standard of need*

and the sum of the total grant and the amount of food stamps, whether received on a onetime or continuing basis, as income or as a potential resource. . . ."  (Emphasis added).

Section 76 of art. 88A provides:

"If at any time during the continuance of assistance the recipient thereof becomes possessed of any property or income in excess of the amount stated in the application, it shall be the duty of the recipient immediately to notify the local unit of the receipt or possession of such property or income and the local unit may, after investigation, either cancel the assistance or alter the amount thereof in accordance with the circumstances.  Any assistance paid before the recipient has come into possession of such property or income and *in excess of his need* shall be recoverable by the county department as a debt due. . . ."

(Emphasis added.)

Appellant's focus is on the italicized language in those two sections.

With respect to § 65A(e), appellant calls our attention to COMAR 07.03.04.13C.(7) which, after tracking the statutory language, states that "the standard of need is $502 for FY 1992."  From this, appellant concludes that, in recouping the "interim" payments, DSS can deduct for each month no more than that which would have left her at least $502/month.

Appellant's construction of § 76 leads to the same point but by a slightly different route.  In 1980, through Senate Joint Resolution 34, the General Assembly noted the finding of the Governor's Commission on Welfare Grants that the cash equivalent for a minimum decent standard of living for a single adult receiving GPA grants was $288/month and urged that (1) that finding be recognized as a realistic statement of the funds needed by individuals for a minimally decent life in Maryland, and (2) the finding be updated annually and used as a basis for evaluating budgetary requirements for the various

public assistance programs.[2]  We are informed by appellant, without contradiction by DSS, that pursuant to the Joint Resolution, the Department of Human Resources has, indeed, updated the amount each year and that for FY 1992 it set the minimum level at $502/month—the same as the standard of need set under § 65A(e).

Under both statutes, Ms. Thomas argues, the State has defined a minimum "need" and therefore cannot deduct from her SSI benefits an amount that, coupled with the GPA benefits she received, would leave her with less than that defined need.  She illustrates her point by using February, 1992 as an example.  In that month, she received $181 in GPA benefits.  She was later declared entitled, retroactively, to receive $422 in SSI benefits for that month, and that $422 was part of the larger checks sent to DSS.  The two amounts, together, aggregate $603.  By deducting from the $422 the full $181 in GPA benefits, DSS left her with only $241 for February, 1992, which is less than the $502 standard of need established both in COMAR 07.03.04.13C(7) and by the Department of Human Resources pursuant to 1980 Senate Joint Resolution 34.  She contends that DSS should not have deducted more than $101 for that month ($603 combined benefit less $502 standard of need) from the $422 SSI benefit.

■  Ms. Thomas's argument not only misconstrues the two statutes she relies upon but is inconsistent with the whole thrust of the GPA and Interim Payment Reimbursement Programs.  The fundamental flaw in the argument lies in the necessary assumption that the interim GPA and subsequent SSI benefits can be pyramided, and that is simply not the case.  One is not a supplement to the other.  Section 65A(a), authorizing the GPA program, makes clear that those benefits are for people who are "temporarily in need but not eligible for any other State or federal category of assistance."  That statement, in itself, precludes a pyramiding of GPA and other

---

**2.**  A similar expression was made with respect to the Commissions's finding concerning the amount required for a family of three receiving AFDC grants.

benefits. Section 65A(e) simply provides that, in determining whether an applicant is "temporarily in need," resources up to the difference between the standard of need and the grant are not to be considered. Thus, in deciding whether Ms. Thomas was eligible for a $181 grant in February, 1992, DSS would not count other resources up to $321, the difference between the grant and the $502 standard of need. That, as we see it, is the only effect of § 65A(e); it has nothing whatever to do with subsequent reimbursement from SSI benefits.

Similarly, the reference to need in Md.Code art. 88A, § 76 is to *present* need, not to what may have existed in the past.

The fallacy in the argument is easily demonstrated. If Ms. Thomas's initial application for SSI benefits had been instantly approved, as ideally it should have been, she would have received SSI benefits of $422/month beginning in May, 1989, and she therefore would have received *no* GPA benefits thereafter, for under the plain language of § 65A(a), she would have been ineligible for such benefits. Her total benefit would thus have been $422, notwithstanding that the State determination of need was higher. That is precisely what she got in this case; she received $181 from GPA and a net of $241 from SSI: total $422. Under her arrangement, she would end up with $502—more than what she would have received if the SSI system worked perfectly.

We are certainly not unsympathetic to persons in Ms. Thomas's circumstances. It is evident from this record that the amount of public assistance available under the SSI program is inadequate in terms of Maryland's standard of need. That is a problem properly addressed to Congress and the General Assembly, however. We cannot twist and stretch the Federal and State laws and regulations beyond their clear import and purpose in order to make the program do more than the legislative bodies authorized it to do.

JUDGMENT AFFIRMED; EACH PARTY TO BEAR THEIR OWN COSTS.